Judge Carr
delivered his opinion.*
Taliaferro had a negro man committed to the jail of" King William county, on the 7th of January, 1821, as a runaway. The slave having become frost-bitten, while in jail, Taliaferro brought an action on the case against the Sheriff, charging that the Sheriff is, by the law of the land, jailor, and as such, bound to furnish necessary food, covering, fire, &c. to all prisoners: that the defendant, as Sheriff, received into the jail of the county, his slave committed as a runaway; and that he, and those acting for him, so negligently and carelessly conducted themselves in that behalf, that the slave became diseased, frost-bitten from cold, crippled and maimed, by and through the mere negligence, carelessness, and default in duty, of the said Sheriff and jailor, and was, and still is of no value to the plaintiff
To this declaration, the defendant demurred generally, and also pleaded several pleas. A trial was had, and a Verdict for the defendant. The Court granted a new trial: and, for reasons appearing, changed the venue to King & Queen. Leave also was given to the defendant, to plead anew, and to the plaintiff to amend. After the removal, *261 a jury was sworn, and found a verdict for the plaintiff, for $400; and the demurrer being over-ruled, the Court gave judgment for the plaintiff.
During the trial, two bills of exception were filed; and it was to the correctness of the Court in deciding these points, that the argument was principally confined.
In the first bill, the counsel moved the Court to instruct the jury, that the defendant, if jailor, was not bound by the law of the land, to furnish the runaway committed on the 7th of January, 1821, with blankets or other bed covering, and with fuel; which motion was over-ruled by the Court, and an instruction to the contrary given.
That the Court did not err in refusing the instructions asked for, seems very clear to me. For I cannot for a moment suppose, that by the law of the land, a human being may be imprisoned in mid-winter, and yet the jailor not bound to provide him with covering or fire. I should as soon think that he was not bound to furnish him food.
If the Court, therefore, had stopped at merely refusing the instructions asked, there could have been no doubt of their correctness; but they over-ruled the motion, and gave instructions to the contrary; that is, being asked to say, that a jailor was not bound to furnish covering and fire to a runaway, committed on the 7th of January, the Court said that he was bound; and I think they were right. Can we suppose a state of the weather at that season, which would justify the jailor in neglecting to make any sort of provision for the cold, neither a blanket to cover, nor a fire to warm the prisoner? If the particular day on which he was committed was so warm, as to have rendered such provision unnecessary for the moment, could the continuance of such weather be counted on, with so much certainty^ as to justify the total omission of attention to the subject? I speak not now under the Act of Assembly, but on the principles of the common law; and I am clearly of opinion, that these principles do not warrant or excuse such omission and neglect. The genius of our law is not so cruel and unfeeling. Non obtusa adeo gestamus pectora.
*262 The second exception. The defendant introduced evidence to prove, that one Thornton, the tavern-keeper, at the court-house, kept the keys of the jail, received prisoners, dieted them, and received the compensation allowed by law for that service: that he held the keys by consent of the Sheriff, and acted in his %tead: that he exercised complete controul over the jail. The plaintiff proved, that the defendant was allowed by the Court, the public allowance, authorised by law to be made to the jailor, which was received by him. Whereupon, the defendant moved the Court to instruct the jury, that under the law of the land, the said Thornton, if it appeared to them that he was appointed by the Sheriff, keeper of the jail, was alone answerable to the plaintiff’s action, and not the High Sheriff; which motion was over-ruled, and the Court instructed the jury, that the Sheriff was ex-officio jailor, unless he appointed some other person jailor; and that the defendant was liable for the misconduct of the said Thornton as his turnkey or servant, unless he could prove, that he had regularly and legally appointed him the jailor; and that the facts attempted to be proved as above, were not conclusive evidence of such regular appointment.
This instruction consists of three positions taken by the Court. 1. That the Sheriff is ex-officio jailor. This I take to be the settled rule of the common law; nor do I see any thing in our Statutes changing it. On the contrary, they seem to take it as the basis, on which their provisions are founded. 2. The Court say, that the defendant was liable for the misconduct of Thornton as his turnkey or servant, unless he proved a regular appointment of him as jailor. This, 1 presume, would scarcely be denied. It would be strange to say, that.the principle which pervades the whole law, qui facit per alium, facit per se, did not apply here. Suppose the Sheriff were to deliver the keys of the jail to his slave, and order him to attend to the prisoners, and carry them food, and this slave were to set the jail door open, and let them escape j would *263 not the Sheriff be answerable? Assuredly he would. 3. The Court said, that the facts attempted to be proved, were not conclusive evidence of the regular and legal appointment of Thornton, jailor. If this be considered an opinion as to the weight of evidence, it was erroneous; for this belongs solely to the jury. But it does not strike me in that point of view.- On the contrary,it was submitting1 the weight entirely to the jury. To say that evidence is conclusive, is to decide that nothing can rebut it; is to con-elude the jury and the party. Here, every thing was left at large. Bogle v. Somerville, 1 Call, 561. There was no error then in this. I have not touched the question, whether, if the Sheriff had regularly appointed Thornton his deputy, he could thereby have relieved himself from all responsibility for his acts, because the Court gave no instruction on that point, and it is not therefore directly raised. But, the inclination of my mind is, that the Sheriff, notwithstanding such appointment, would be liable, as in other cases, for the acts of his deputy.
Judges Green and Coalter concurred, and the judgment was affirmed.

 The President and Judge Cabeid absent.