James Dickson Phillips, Circuit Judge, filed an opinion dissenting in part and concurring in part in which Harrison L. Winter, Chief Judge, and Murnaghan, Circuit Judge, joined and in which Ervin, Circuit Judge, concurred in part.

Ervin, Circuit Judge, filed an opinion concurring in part and dissenting in part.

**Roy E. DANIELS, Appellant,**

v.

**Andrew WILLIAMS, Deputy, Appellee.**

**No. 82–6538 \*.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1983.

Decided Nov. 16, 1984.

Certiorari Granted Feb. 19, 1985.
See 105 S.Ct. 1168.

---

\* This case was argued together with *Ausley v. Mitchell,* and *Poole v. Morris,* 748 F.2d 224.

Russell Williams, Third Year Law Student (Robert E. Shepherd, Richmond, Va., University of Richmond School of Law, Patricia L. Harrington, Third Year Law Student, on brief), Stephen Saltzburg, Charlotteville, Va., for appellant.

James W. Hopper, Alan Katz, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen. of Va., Richmond, Va., on brief), Richmond, Va., for appellee.

Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, ERVIN and CHAPMAN, Circuit Judges, sitting en banc.

## ON PETITION FOR REHEARING:

WIDENER, Circuit Judge:

This case is an appeal from a judgment for the defendant in an action brought under 42 U.S.C. § 1983. We affirm.

Roy Daniels was a prisoner in the Richmond city jail on January 23, 1982, when he slipped and fell on a pillow and newspapers negligently left on some stairsteps by the defendant Williams, a deputy sheriff. The fall resulted in injuries to Daniels' back and ankle, for which he received medical treatment. While the facts surrounding Daniels' fall may be disputed, the district court found a common law negligence remedy available to Daniels and dismissed the case for failure to state a cause of action. Thus, for the purposes of this opinion, we assume that Daniels fell and that his fall was caused by Williams' negligence.

Daniels' suit must fail for two alternate reasons, either of which is fatal to his claim. The first is that we are of opinion Daniels' bodily injury occasioned by simple negligence was not a liberty interest protected by the due process clause.[1] Second, even if Daniels had a liberty interest violated by the negligence of Williams, then he had a remedy under the law of Virginia which satisfied the requirements of procedural due process.

## I.

*Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), decided that the negligent loss of two packages of hobby materials, belonging to one prisoner, and lost by a prison employee and another prisoner, was a deprivation of property under the Fourteenth Amendment. *Parratt* at p. 536–537, 101 S.Ct. at p. 1913–1914. The Court went on to decide, however, that because Nebraska provided a tort remedy as a means of redress for property deprivation, the deprivation was not without due process of law.

Until *Parratt* was decided, in this circuit a claim of mere negligence did not give rise to a cause of action under § 1983. We decided that explicitly in *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir.1970), in which, however, we granted relief in a case where the defendant's actions were variously described to be gross and culpable, wanton and a raw abuse of power, but falling short of an intentional act. So our decision in *Jenkins* so far as property is concerned now gives way to *Parratt.*[2]

---

1. There is no claim of any substantive due process violation. The facts here are not nearly aggravated enough to even make the proposition arguable. See, generally, *Hall v. Tawney,* 621 F.2d 607 (4th Cir.1980).

2. While the dissenting opinion's analysis of the majority's position, that of extraordinary reluctance to change circuit precedent, may have been helpful in staking out its position, it sets up a strawman to disagree with. Of course the reasoning of *Jenkins* is not consistent with *Par-*

We do not believe the Court intended *Parratt* to be applied automatically in a per se manner in every instance in which an act of negligence can also be stated as a § 1983 claim. The Court itself noted, at p. 534, 101 S.Ct. at p. 1912, quoting *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), that "[T]he question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action."

In *Parratt*, the concluding paragraph of the opinion of the Court took pains to explicitly disavow construing its decision so that it might result in "turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983." 451 U.S. at 544, 101 S.Ct. at 1917. The Court continued:

> "It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever circumstance may already be administered by the States.' *Paul v. Davis*, 424 U.S. 693, 701 [96 S.Ct. 1155, 1160, 47 L.Ed.2d 405] (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society." 451 U.S. at 544, 101 S.Ct. at 1917.

Thus, the Court, by explicitly rejecting a construction of its opinion which would permit maintaining a § 1983 claim for bodily injuries based on the negligent operation of an automobile by a state official acting under color of law, has limited its decision. Because we doubt that the Court intended to convey the impression that a prisoner suffering bodily injury from the negligence of a state official stands on a better footing than an ordinary citizen so injured, we think the Court intended to limit its decision to claims for the deprivation of property asserted by a prisoner, and we so hold. The difference in treatment between a prisoner's property and his person may easily be justified. The demands of prison safety, life, and discipline make it obligatory for prison officials to have possession of, and search at some time or another, all of the property belonging to every prisoner. Prisons could be operated in no other fashion. Because the state of necessity has such complete control of the prisoner's property, calling it to account for the unexplained loss thereof is not inconsistent with demands of the Fourteenth Amendment. No such reasons exist, however, to set the prisoner above the ordinary citizen in the protection of his person. If the ordinary citizen may not sue under § 1983 a state employee who has negligently deprived him of a liberty interest by injury to his person, then the prisoner should not be allowed to prosecute a similar claim. The Supreme Court has expressed the same thought in a different context. Just as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner,"[3]

---

*ratt*, as *Parratt* makes mere negligence actionable, while *Jenkins* requires more, and, of course, circuit precedent must give way to the superior authority of the Supreme Court. Even the suggestion that these propositions are not acknowledged by the majority is too far fetched to merit more than summary denial. But recognition of the fact that the *result* which *Jenkins* would obtain when applied to a negligent injury to the person happens to agree with the *result* required by *Parratt* in the same situation, indi-

cates not a reluctance on the part of the majority to change circuit precedent, rather the failure of the dissent to acknowledge that *Parratt* and *Jenkins* require similar results on the same fact situation but for different reasons as the majority opinion indicates. We follow *Parratt*.

3. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

neither should negligent injury to the person.

■ We are thus of opinion the negligent injury to the plaintiff's person is not a protectable liberty interest under the due process clause and the complaint does not state a cause of action under § 1983 on that account.

## II.

■ It is not disputed that in Virginia at all times here pertinent a common law tort action for negligence might have been maintained against a state employee performing ministerial duties. While the State is immune,[4] see *James v. Jane*, 221 Va. 43, 267 S.E.2d 108, 113 (1980), the employee is not. *First Virginia Bank-Colonial v. Baker*, 225 Va. 72, 301 S.E.2d 8 (1983). The sovereign immunity which may attach to employees performing discretionary duties does not attach to those performing ministerial acts.

This was made clear in our recent case of *Phelps v. Anderson*, 700 F.2d 147 (4th Cir. 1983), and most recently, as we have noted above, by *First Virginia Bank-Colonial* in the state courts. In *Phelps*, prison employees had negligently deprived a prisoner of the use of his television set for a period of time. A prison adjustment committee had decided that the plaintiff owned the set and the prison employees' negligent failure to return the set to the rightful owner, we held, was an act in which they had no discretion, and accordingly, because that prisoner had the right to proceed under Virginia law, we held that *Parratt* barred his § 1983 claim. In *First Virginia Bank* the suit was against the clerk of a court whose deputy had negligently indexed a deed of trust on the wrong page of the index book. The Virginia court held that

act to be ministerial and allowed a suit to proceed against the clerk on account of the negligence of the deputy.

■ In the case at hand, there is no claim that the deputy sheriff, Williams, was exercising any discretionary duty when he left the pillow on the stairsteps, so his actions at the most, looking at the case in the best light from Daniels' side, were merely ministerial. Because Williams' duties were ministerial, it was possible for Daniels to maintain an action in the Virginia courts on account of his injury without being met with the defense of sovereign immunity. Thus, even if Daniels were deprived of a liberty interest protected by the Fourteenth Amendment, the deprivation was not without due process of law under *Parratt* because a post-deprivation remedy was available in the state courts.

The plaintiff argues that sovereign immunity is available to Williams as a defense, and it follows, the argument goes, that if sovereign immunity is available as a defense, any remedy he may have under state law may be inadequate and not in fact a remedy. The defendant argues that any immunity which may exist under state law is little different from the immunity afforded state officials in the federal courts in suits under § 1983, and continues that since the immunities involved are akin, even if not the same, then the existence of immunity should not serve to permit the suit to be maintained. Because we believe there is no significant difference in the duties of the deputy sheriff in this case, the prison officials in *Phelps*, and the deputy clerk of the court in *Baker*, we think the duties of Williams were ministerial and do not reach the question of whether or not the existence of a possible immunity defense should permit the action to be maintained under § 1983.[5]

**4.** Virginia recently enacted a Tort Claims Act, Va.Code § 8.01–195.1 *et seq.* (Supp.1982), which applies to acts occurring on or after July 1, 1982, and which surrenders the immunity of the Commonwealth for certain torts under specified conditions. That statute, of course, would have no effect in this case.

**5.** We have grave doubt that the immunity question, whether the acts complained of were discretionary or ministerial, has any proper place in this case in any event, since the case involves a sheriff and not some other public employee or officer. In *Dabney v. Taliaferro*, 25 Va. (4 Rand.) 256 (1826), the court held that a sheriff was held to a standard of ordinary care ("omis-

The judgment of the district court is AFFIRMED.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting in part and concurring in part:

The majority affirms dismissal of Daniels's claim under 42 U.S.C. § 1983 on alternative grounds. First, that as a matter of general principle there is no constitutionally protected liberty interest in being free of bodily injury caused by merely negligent, as opposed to intentional, conduct of state agents, or, put differently, that the merely negligent infliction of bodily injury by a state agent does not constitute "deprivation" of any constitutionally protected liberty interest; second, that even if such an interest in general exists, or such a deprivation might in general occur, any deprivation occurring here was not without due process because the state provides an adequate post-deprivation remedy for Daniels in the form of a traditional common law personal injury negligence action. Since § 1983 requires proof both that there has been deprivation of a constitutionally protected liberty (or property) interest and that it shall have occurred without due process, no cognizable § 1983 claim is here stated.

I disagree with the first ground.

On the second, I agree that with respect to the kind of negligent deprivation of liberty interest here involved a state's post-deprivation tort remedy may provide the process constitutionally due; but I do not believe that due process is provided if a sovereign immunity defense is available to bar the state's post-deprivation remedy. And because I do not believe that on the record before us we can determine whether that defense is so available, I would only affirm dismissal of this § 1983 claim on condition that it might be reinstated if the defense is drawn upon to bar his state claim in state court.

I therefore dissent to the outright dismissal mandated by the majority.

### I

As I understand the majority's reasoning on the first ground—that there is no constitutionally protected liberty interest in being free of bodily injury inflicted negligently by state agents—it runs as follows. Until *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), decided that one could be "deprived" of a constitutionally protected property interest by negligent conduct of state agents, the law of this circuit had been that only intentional conduct could "deprive" of either property or liberty interests. *Parratt* decided only that one might be so deprived of property interests; hence prior circuit law respecting the deprivation of liberty interests is unaffected by intervening Supreme Court authority and remains that one may not be so deprived of liberty interests. By implication, circuit law on liberty interests should not in this case be brought into conformity with *Parratt*'s new dispensation as to property interests, because there are rational bases for maintaining the distinction first necessitated by *Parratt*.

sion and neglect" was the exact phraseology) in the keeping of a prisoner by a contract jailer. If a suit may be maintained against a sheriff directly, it could probably be maintained against a deputy, and, even if not, the remedy afforded against the sheriff would satisfy the requirements of *Parratt*.

Our position with respect to this matter is supported by the statement in *First Virginia Bank* that "... we find no logic in a rule that exempts him [a clerk of the court] from the doctrine of *respondeat superior* whether the wrong committed by his deputy is discretionary or ministerial in character." 301 S.E.2d at p. 12. *First Virginia Bank* also noted with approv-

al *Moore's Adm. v. Dawney, et al*, 13 Va. (3 H. & M.) 127 (1808), and the statement in that case that "[t]he law looks upon the sheriff and his officers as one person; he is to look to his officers that they do their duty; for if *they* transgress, *he* is answerable to the party injured by such transgression; and his officers are answerable *over* to him." 13 Va. (3 H. & M.) at p. 132; 301 S.E.2d at p. 11, n. 3.

Because the parties have not approached the case from this angle, we express no opinion on the subject, but, to repeat, whether or not there is necessarily any immunity question in the case seems doubtful.

With respect, I simply disagree with this analysis.

First off, I do not believe that the critical principles that emerged from *Parratt* can be read as being narrowly confined to property interests. It is true that the case was about a property interest so that the specific holding is so limited, but the threshold issue identified and addressed in the majority opinion was "whether mere negligence will support a claim for relief under § 1983," 451 U.S. at 532, 101 S.Ct. at 1911. And this issue was answered affirmatively, if somewhat obliquely, in the same broad terms in which it was put by the Court: "§ 1983 affords a 'civil remedy' for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind." 451 U.S. at 535, 101 S.Ct. at 1913.

All of the other Justices writing in the case assumed that a necessary implication of the majority's holding on this point was that it applied to liberty as well as property interests. Justice Powell, concurring, was principally concerned that "deprivation" should not be construed to cover any but intentional acts, and he unmistakably assumed, as his references show, that the Court's opinion applied to deprivations of liberty as well as property interests. 451 U.S. at 546–554 & nn. 6, 7, 9, 101 S.Ct. at 1918–1923 & nn. 6, 7, 9. Justice Stewart, concurring, also plainly assumed that the majority's specific holding that depriva-

tions of property might be by negligent conduct necessarily would apply in logic as well to deprivations of liberty. 451 U.S. at 544–45, 101 S.Ct. at 1917–18 (Stewart, J., concurring). Justice Blackmun, concurring, joined by Justice White, was only concerned that the majority's post-deprivation remedy analysis should be confined to property cases and not extended to claimed deprivations of life or liberty, clearly assuming that deprivation of either might be by negligent or intentional conduct. 451 U.S. at 545–46, 101 S.Ct. at 1917–18.

I therefore believe that whatever may have been the pre-*Parratt* state of circuit law, *Parratt* made it plain as national law that whether challenged conduct was negligent or intentional is irrelevant to the threshold § 1983 question whether it was committed under color of state law and whether it deprived a person of federally secured rights, *see Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912, and that this is true whether the rights allegedly violated involved property or liberty interests.[1]

Furthermore, I doubt that it is accurate to suggest that before *Parratt*, this circuit had never recognized any § 1983 claim based on mere negligence. Certainly we had recognized such claims in the congruent eighth amendment context. *See, e.g., Withers v. Levine*, 615 F.2d 158, 162 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980) (negligent failure to protect prison inmate against known threats of physical harm).[2]

---

**1.** The majority here relies heavily on the *Parratt* majority's specific expression of concern about § 1983 being extended to cover "an automobile accident with a state official," *see* 451 U.S. at 544, 101 S.Ct. at 1917, as showing an intention by that *Parratt* Court to confine its "deprivation by negligence" holding to cases involving property interests. But the language quoted occurs in a passage laying out a general justification for finding in state post-deprivation remedies an appropriate means by which to prevent § 1983's extension to *all* negligence cases. Indeed, the *Parratt* Court's hypothetical automobile accident could presumably have given rise both to property damage and personal injury claims; the Court is saying that *both* are being kept out of § 1983's reach by the post-deprivation remedy solution.

**2.** The majority says that in *Jenkins v. Averett*, 424 F.2d 1228 (4th Cir.1970), we had decided explicitly that a claim of "mere negligence" did not give rise to a cause of action under § 1983. With all deference, I suggest that the language referred to in *Jenkins* was *dicta* that has necessarily been treated as such in later pre-*Parratt* cases such as *Withers*. *See also McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir.1972) (Sobeloff, J.) (holding that "a section 1983 action may be based on negligence when it leads to a deprivation of rights," citing *Jenkins* ).

The specific holding in *Jenkins* was that the non-intentional infliction of harm there in issue was cognizable in § 1983 because of its particular quality of wantonness and degree. This was thought to amount to a "substantive due process" violation, and the language referred to by

Finally, with all deference, I simply cannot accept the majority's apparent holding that somehow the fourteenth amendment imposes a more stringent duty upon the states to avoid deprivations of the property than the liberty interests of either their prison inmates or citizens in their free societies. If there is a constitutional scale of values associated with the two kinds of interests, the majority's analysis seems to me to stand on its head the obvious rank order that would be assigned them. *See Parratt*, 451 U.S. at 542, 101 S.Ct. at 1916 (suggesting that an intentional deprivation of liberty interests is "arguably ... more egregious" than a negligent deprivation of property interests); *id.* at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring) (suggesting that deprivations of liberty interest might not be adequately remedied by state post-deprivation process though deprivations of property interests could be). Certainly in purely human terms it would be difficult to suppose that the Constitution assigned less value to the concededly modest bodily harm allegedly suffered in this case than the Supreme Court in *Parratt* held that it assigned to the loss of a $23.50 hobby kit.

I would therefore hold, contrary to the majority, that Daniels's complaint states a cognizable § 1983 claim that he was deprived of a liberty interest by the defendant acting under color of state law. This would then lead to the question whether the complaint had also sufficiently alleged that the deprivation was without due process.

the majority was simply setting in contrast negligent inflictions of harm not rising to that level. In retrospect, *Jenkins* and other pre-*Parratt* substantive due process decisions are properly seen as harbingers of the principle that for some deprivations of secured interests—including those caused by "mere negligence"—post-deprivation state remedies *may* supply the process constitutionally due that makes them not cognizable under § 1983. Thus the holdings of those cases are not that "mere negligence" can never deprive of constitutionally secured interests and thus support cognizable § 1983 claims, but that some such deprivations are of such a character that no state post-deprivation remedy could constitute due process. *See Palmer v. Hudson,* ——

## II

On the due process question, I think it plain that *Parratt*'s principal holding that a state's post-deprivation remedies may supply the due process that suffices to defeat an otherwise cognizable claim of rights deprivation under § 1983 applies to liberty as well as property interests. Indeed, the general principle had already been established in the pre-*Parratt* liberty interest case of *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (school paddling), a point the *Parratt* Court expressly recognized and relied upon. *See Parratt,* 451 U.S. at 542, 101 S.Ct. at 1916 (court's post-deprivation remedy analysis asserted to be "quite consistent with the approach taken ... in *Ingraham*"). Accordingly, I accept that Virginia's ordinary tort remedies (irrespective of any special state Tort Claims Act remedies later provided) might supply the due process that would defeat a § 1983 claim such as Daniels's.

But I would hold that if under state law the defendant in this case could avoid liability on Daniels's state-law claim by the defense of sovereign immunity, the state's post-deprivation remedy does not provide for Daniels the adequate state remedy required to defeat his § 1983 claim on *Parratt/Ingraham* grounds. *See Parratt,* 451 U.S. at 551 n. 9, 101 S.Ct. at 1921, n. 9 (Powell, J., concurring).[3]

## III

But this in turn, then leads to the difficult question of how, in this or any case, a

U.S. ——, —— n. 4, 104 S.Ct. 3194, 3197 n. 4, 82 L.Ed.2d 393 (1984) (Stevens, J., concurring).

3. The state suggests that even if sovereign immunity is available to defeat a parallel state tort claim, this cannot be held to negate the adequacy of the state's post-deprivation remedy as due process, given the fact that the availability of a qualified immunity defense to § 1983 claims is not thought to raise any due process questions. There is an element of plausibility in this, but I think it could present a serious question only if the available state immunity defense were no broader than the qualified immunity defense under § 1983. There is no suggestion here of that, and the question can therefore be reserved for another day.

federal § 1983 court is to determine whether an otherwise adequate post-deprivation state remedy is made inadequate because of the possible availability of a sovereign immunity, or other official immunity, defense to the generally cognizable state-law claim. Of course, no problem would exist where state law on the point is clear, or is stipulated, or possibly where the defense though available is waived for a particular case. But that, regrettably, is not the case we have. Here, the availability and scope of the defense is by no means clear on the record before us.[4] And indeed, the problem is aggravated here by the fact that though the Commonwealth argues before us that the state remedy is not made inadequate by that means, we are told that in the parallel state action it has raised sovereign immunity as a defense.

In this situation, I believe that the only fair course for a federal § 1983 court—certainly the only fair one for the claimant—is to condition dismissal of the § 1983 action on the abandonment or waiver by the state of any sovereign immunity defense it might assert, or the entry of an authoritative judgment by the state court that the defense does not bar the claimant's state claim.

Accordingly, I would remand to the district court with instructions to dismiss on those conditions, leaving to claimant the right to reinstate his § 1983 claim upon the entry of any judgment in his state action holding his state claim barred by sovereign immunity.

Chief Judge HARRISON L. WINTER and Judge MURNAGHAN authorize me to say that they join in this opinion. Judge ERVIN authorizes me to say that he concurs in part I of this opinion.

**4.** The majority avoids specific decision on this issue by assuming that if the existence of a sovereign immunity defense could make a state's post-deprivation process inadequate for § 1983 purposes, no such defense would be available under state law to the defendant here, either because the duties in question were ministerial or because no sovereign immunity defense is available to a sheriff (or his deputy) as distinguished from other state officials. For

ERVIN, Circuit Judge, concurring in part and dissenting in part:

I concur in Part II of the majority opinion and in the decision to affirm the judgment of the district court.

I am unable, however, to accept the rationale contained in Part I of the majority opinion, and I respectfully dissent therefrom, for the reasons cogently stated by Judge Phillips in Part I of his dissenting opinion, in which I join.

reasons explained in Judge Winter's opinion in the companion cases, *Ausley v. Mitchell* and *Poole v. Morris,* 748 F.2d 224 (4th Cir.1984), and because of the state's litigation positions in this and the parallel state action, I do not believe that the assumption that no sovereign immunity defense will be available in the state action can—in fairness to claimant—be indulged by this court as the basis for dismissal.