Frank HAYGOOD, Plaintiff-Appellee,

v.

Evelle J. YOUNGER, et al., Defendants,

and

Harold Cranke and Benjamin Seymour, Defendants-Appellants.

No. 81–4686.

United States Court of Appeals, Ninth Circuit.

Argued En Banc and Submitted July 11, 1984.

Decided Aug. 27, 1985.

**1352**

Jack Jacobson, Santa Cruz, Cal., for plaintiff-appellee.

William George Prahl, Deputy Atty. Gen., Sacramento, Cal., for defendants-appellants.

Before BROWNING, Chief Judge, and GOODWIN, HUG, TANG, SKOPIL, SCHROEDER, FARRIS, ALARCON, FERGUSON, CANBY and REINHARDT, Circuit Judges.

GOODWIN, Circuit Judge.

Two prison officials appeal a judgment for $2,090 in damages and $45,383 in attorneys' fees in Frank Haygood's § 1983 action for damages for prolonging his state prison detention by using an incorrect method to compute his release date. *Haygood v. Younger*, 527 F.Supp. 808 (E.D.Cal. 1981). Our panel decision reversed that judgment. *Haygood v. Younger*, 718 F.2d 1472 (9th Cir.1983), *withdrawn*, 729 F.2d 613 (9th Cir.1984). Because this case presents important questions about the scope of due process available to state prisoners, we took it with two others for en banc reconsideration.[1]

The law in this circuit and elsewhere is controlled by the Supreme Court opinions in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Those three cases shed recent light upon any analysis of claims under § 1983. Haygood's particular injury and the process the state provided, although unusual, do not require a departure from settled precepts of § 1983 analysis.

## Background

Frank Haygood, after spending more than twenty years in California prisons, obtained his freedom by bringing a habeas corpus action in state courts. *In re Haygood*, 14 Cal.3d 802, 122 Cal.Rptr. 760, 537 P.2d 880 (1975). In that action, Haygood challenged the formulae by which the California Adult Authority calculated his prison sentence under California's continuous term policy.[2] The problem arose because of an ambiguity between two California statutes with respect to when Haygood's term for escape could commence.

While serving two terms for previous convictions, Haygood escaped from prison and subsequently committed a robbery. He was first tried for and convicted of the robbery and after that the escape. Section 669 of the California Penal Code provided that where a defendant is convicted of two crimes, the second sentencing judge has discretion to make the terms of the two convictions concurrent or consecutive. Cal. Penal Code § 669 (West 1956). *See In re Haygood*, 537 P.2d at 885 n. 7. Relying on this provision, the Adult Authority believed Haygood's escape term to be consecutive to his robbery term and did not fix his escape term to begin until after his robbery term had expired. *See* Cal.Penal Code § 3021 (West 1956).

The California Supreme Court found that this determination by the Adult Authority was incorrect. At the time of Haygood's

---

1. This case was heard along with *Piatt v. Mac-Dougall*, 723 F.2d Adv.Sh. 721 (9th Cir.), *withdrawn*, 729 F.2d 613 (9th Cir.1984), and *Bretz v. Kelman*, 722 F.2d 503 (9th Cir.1983), *withdrawn*, 729 F.2d 613 (9th Cir.1984).

2. Until 1977, California had an indeterminate sentencing law under which a prisoner's specific sentence would be determined by the California Adult Authority within limits set by law. At the time, the state's continuous term policy required that, when a prisoner had two or more terms which were ordered to be served consecutively, they would become one continuous term in which none of them would be discharged until all were discharged. *See* Cal.Penal Code § 1168 (West 1970).

All references to the California Penal Code herein are to the Code in effect at the time of Haygood's sentencing in 1959 or at the time of the California Supreme Court decision in 1975. Several sections cited have since been repealed or significantly amended.

escape, § 4531 of the Penal Code required that an escape term commence at the time the escapee would have been discharged from the terms he was serving had he not escaped. Cal.Penal Code § 4531 (West 1956). The court found that this provision prevailed over the general provisions of § 669 and thus Haygood's escape term could not be consecutive to his robbery term, but only to the two terms he was serving at the time of his escape. Because these two terms had both expired by March 14, 1963, Haygood's escape term could not be fixed as commencing after the end of Haygood's robbery term in 1970 (retroactively to January 8, 1969). Haygood thus should have been discharged at the end of his robbery term under § 2940 of the Penal Code.[3]

The panel opinion sets forth the details of Haygood's dispute with the state prison system. *Haygood,* 718 F.2d at 1474–78. We need not repeat those details here, beyond noting that in March 1974 Haygood wrote the warden a letter questioning the running of his sentence for escape consecutively after he served his sentence for robbery. He demanded that he be released. The letter was investigated by the two defendants who then were employed as Records Officer II and Records Officer III. Their written answer to Haygood explained that, according to the relevant statutes, he correctly was being held to start his escape sentence after he completed his robbery sentence. They attached to their routing slip to Haygood a copy of an attorney general's opinion that they believed to be supportive of their letter. It does not appear from the record that Haygood then demanded or was offered an administrative hearing.

In due course Haygood brought habeas corpus proceedings in the state courts. The errors in Haygood's sequence of serving the various sentences did not become manifest until after the California Supreme Court had subjected a complex web of sentences, statutes and regulations to sophisticated scrutiny. *In re Haygood,* 537 P.2d at 884–87. After Haygood's release from prison in 1975, he brought this action in federal court under 42 U.S.C. § 1983, alleging that more than a dozen state officers had deprived him of his liberty without due process of the law and subjected him to cruel and unusual punishment in violation of the Eighth Amendment.

On pretrial motions, the claims against the state attorney general, the nine members of the California Adult Authority, and the director of the state department of corrections were dismissed. At the close of the plaintiff's case, the trial judge directed verdicts in favor of the warden of Folsom prison, the administrative officer of the Adult Authority, and the correctional counselor. The case went to the jury on the claims against Records Officers Cranke and Seymour. The jury found these remaining defendants liable for depriving Haygood of his constitutional rights. There is no cross-appeal, and consequently no question before us on the reduction of the number of defendants in the case.

### Appropriateness of § 1983

In any § 1983 action, the first question is whether § 1983 is the appropriate avenue to remedy the alleged wrong.[4]

---

3. Section 2940 of the California Penal Code specified:

    Where the Adult Authority is authorized to fix and refix the term of imprisonment of a prisoner, such prisoner shall be discharged from custody upon the completion of said term so fixed or refixed and if the Adult Authority fails to fix the term of imprisonment the prisoner shall be discharged upon the completion of the maximum punishment provided by law for the offense for which the prisoner was convicted. Cal.Penal Code § 2940 (West 1956) (repealed 1977).

4. An alternative remedy for damages was available to Haygood. California state law provides an action in tort for prisoners whose release is unlawfully delayed. *See e.g., Jackson v. City of San Diego,* 121 Cal.App.3d 579, 588, 175 Cal. Rptr. 395, 400 (1981) ("A person kept in custody after his jail term expires is entitled to redress for damages for false imprisonment even where the incarceration starts in a lawful manner"). *See also Sullivan v. County of Los Angeles,* 12 Cal.3d 710, 117 Cal.Rptr. 241, 527 P.2d 865, 869 (1974); *Shakespeare v. City of Pasadena,* 230 Cal.App.2d 375, 40 Cal.Rptr. 863, 869–70 (1964). Haygood is not, under present federal law, re-

We reach the issue of these defendants' § 1983 liability only if we find that the two essential elements to a § 1983 action are present: (1) the defendants acted under color of law, and (2) their conduct deprived Haygood of a constitutional right. 42 U.S.C. § 1983.

■ We need not be detained by the requirement that the defendants acted under color of state law. The defendants' conduct was under color of law. The officers were clothed with the legitimacy of the government and were purporting to act thereunder. *Monroe v. Pape*, 365 U.S. 167, 172–87, 81 S.Ct. 473, 476–484, 5 L.Ed.2d 492 (1961). It is not necessary to show that these officers were acting specifically within the scope of their authority because negligent abuse of authority by state officials can form the basis for a § 1983 cause of action. *Parratt*, 451 U.S. at 534–35, 101 S.Ct. at 1912–13. Intentional acts by state officials, even if committed without specific authority can satisfy the color of law requirements of § 1983, *Hudson*, 104 S.Ct. at 3202, as can conduct pursuant to established state policy, *Logan*, 455 U.S. at 435–37, 102 S.Ct. at 1157–58, and errors by individual officers in the absence of an affirmative government policy. *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). *Cf. Monell v. Dep't of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir.1983).

■ Our inquiry thus will focus on the second element of a § 1983 cause of action. Assuming that Haygood suffered an injury under color of law, that injury is cognizable under § 1983 if the right affected is one guaranteed by the constitution. *Baker*, 443 U.S. at 142, 99 S.Ct. at 2693.

Liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment. Haygood alleges that the defendant state officials deprived him of liberty by wrongfully keep-

ing him in custody from 1970 to 1975. Although Haygood's sentence expired in 1970, the Adult Authority did not release him until ordered to do so in 1975 by the California Supreme Court. As the district court noted, the state lost its power to hold Haygood in 1970; any continued detention deprived him of his rightful liberty. *McNeil v. Director, Patuxent Institution*, 407 U.S. 245, 246, 92 S.Ct. 2083, 2085, 32 L.Ed.2d 719 (1972). *See Haygood*, 527 F.Supp. at 813.

## Eighth Amendment Theory

Haygood's first theory of liability is that his unlawful incarceration constituted cruel and unusual punishment in violation of the Eighth Amendment.

■ Detention of Haygood beyond the termination of his sentence was undoubtedly punishment within the constitutional meaning of that term. *Bell v. Wolfish*, 441 U.S. 520, 535–40, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979). To be cruel and unusual, punishment must be incompatible with "the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), or must involve unnecessary or wanton pain disproportionate to the severity of the crime. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Detention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of "deliberate indifference" to the prisoner's liberty interest, *see Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976); otherwise, such detention can be held to be unconstitutional only if it violates due process. *Wolfish*, 441 U.S. at 535 n. 16, 99 S.Ct. at 1872 n. 16.

The panel opinion held that the deliberate indifference standard requires a finding of some degree of individual culpability. *Haygood*, 718 F.2d at 1482 & n. 2. The

quired to have explored state remedies before proceeding under § 1983 to seek compensation for alleged constitutional injury. *Monroe v.*

*Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

district judge gave the following instruction, with which the defendants agreed:

> In order to find plaintiff has been subjected to cruel and unusual punishment you must find that defendants, or any of them, by their actions intended to punish plaintiff and that this punishment violated the basic prohibition against inhuman treatment.

This imposed a more stringent standard of "an intent to punish" Haygood by retaining him beyond the termination of his sentence. On motion for judgment notwithstanding the verdict, the district judge emphasized three times in his opinion that there was sufficient evidence from which the jury could have found that Cranke and Seymour intended to punish Haygood by their actions, 527 F.Supp. at 819, 821–22. However, the district judge went on to explain his view that, on reflection, he no longer thought that it was necessary to prove that the defendants intended to inflict the additional imprisonment, but that "to the extent that the defendants caused such an injury to the plaintiff, they were liable to him under section 1983." 527 F.Supp. at 822. In effect, the district judge was pointing out in dictum that the instruction he had given imposed a stricter standard of proof than he believed necessary, but that there was sufficient evidence to uphold the verdict, even under the stricter standard requiring intentional conduct.

The panel opinion disagreed with the dictum of the district court and held that " 'cruel and unusual' requires a degree of culpability on the part of state officials." 718 F.2d at 1482. The panel found, and we agree, that the degree of culpability required is "deliberate indifference."

As the district court noted, "[T]he plaintiff presented credible evidence that the defendants, after being put on notice, simply refused to investigate a computational error." *Haygood,* 527 F.Supp. at 823. Thus, there was adequate evidence from which the jury could have found liability under the appropriate standard of "deliberate indifference" and we need not determine whether the district court was correct in concluding there was sufficient evidence to support a finding of liability under the more stringent standard of actual intent.

## Due Process Theory

Haygood's second theory of liability requires a more probing examination. He alleges that the illegal incarceration deprived him of liberty without due process of law, in violation of the Fourteenth Amendment.

False imprisonment or deprivation of liberty is not per se unconstitutional merely because the defendant is a state official. *Baker,* 443 U.S. at 146, 99 S.Ct. at 2695. Similarly, the Fourteenth Amendment does not guarantee state prisoners a particular method of calculating prison sentences. *See Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). But when the state itself creates a statutory right to release from prison,[5] the state also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated. *Vitek v. Jones,* 445 U.S. 480, 488–89, 100 S.Ct. 1254, 1261–62, 63 L.Ed.2d 552 (1980). *See Meachum v. Fano,* 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976). Therefore, if the officials made their calculations in a manner which denied Haygood his statutory right to liberty without due process of law, a constitutional violation exists and a cause of action is available under § 1983. The question, thus narrowed, is whether the defendants denied Haygood due process of law.

Adequate, or due, process depends upon the nature of the interest affected. *See Morrissey v. Brewer,* 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972). The more important the interest and the greater the effect of its impairment, the greater the procedural safe-

---

5. *See* Cal.Penal Code §§ 669, 2940, 3021, 4531 (West 1956). For a discussion of the interaction of these statutes and the proper statutory construction, see *In re Haygood,* 537 P.2d at 882–85.

guards the state must provide to satisfy due process. *Id.* at 481, 92 S.Ct. at 2600.

This circuit has not spoken with one voice on whether the taking of liberty demands inherently greater process than the taking of property. *Compare Wakinekona v. Olim,* 664 F.2d 708 (9th Cir.1981), *rev'd on other grounds,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (liberty and property demand different process) *with Rutledge v. Arizona Board of Regents,* 660 F.2d 1345 (9th Cir.1981), *aff'd on other grounds sub nom, Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983) (liberty and property are the same). There is also a division among other circuits on this issue. *See, e.g., Parratt,* 451 U.S. at 545, 101 S.Ct. at 1917 (Blackmun, J., concurring); *Patterson v. Coughlin,* 761 F.2d 886, 890, (2d Cir.1985) (procedural safeguards for liberty must be "at least equal" to those for property); *Shelton v. City of College Station,* 754 F.2d 1251, 1257 (5th Cir.1985), *reh'g pending,* 765 F.2d 456 (5th Cir.1985) (*Parratt* rules do not apply to deprivations of liberty); *Wilson v. Beebe,* 743 F.2d 342 (6th Cir.1984) (life and liberty inherently more important than property); *Thibodeaux v. Bordelon,* 740 F.2d 329 (5th Cir.1984) (liberty and property not doctrinally distinct); *Daniels v. Williams,* 720 F.2d 792 (4th Cir.1983) (liberty and property are similar), *aff'd on reh.* 748 F.2d 229 (4th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 320 (1985); *Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983) (treat liberty and property similarly).

While some judges have perceived in specific cases some rhetorical dichotomy between liberty and property, we believe that the inquiry more appropriately focuses on the gravity of the effect of government conduct on protected interests. All denials of life, liberty or property will fall somewhere on a continuum between relatively minor effects on nonconstitutional interests at one end, and the loss of life at the other. On that continuum, we recognize that a denial of liberty will often have a more grave effect upon the victim than will a deprivation of property. Without categorizing an interest as liberty or property, the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), called for a balancing to determine what process is due. *Mathews* teaches that it is necessary to weigh the risk of an erroneous deprivation, the state's interest in providing (or not providing) specific procedures, and the strength of the individual's interest. *Id.* at 335, 96 S.Ct. at 903; *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985).

No one suggests that Haygood's five extra years in prison were de minimis. At least 17 months of his extra time were spent after his protests and demands were known to these defendants. On the continuum from minor to major effects on protected interests, Haygood's loss of liberty falls among the major deprivations. In light of *Mathews,* (social security) and *Morrissey* (parole revocation) due process in this case required the state to provide Haygood with a meaningful hearing at a meaningful time. *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). *See Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977).

Deciding that due process required the state to provide Haygood with a meaningful hearing does not end our inquiry into whether he suffered a constitutional deprivation. We must next decide whether the hearing should have been provided at an earlier date than the hearing he eventually received in response to his state habeas corpus action.

In *Parratt, Logan,* and *Hudson,* the Supreme Court used the terms predeprivation and postdeprivation process to refer to hearings provided before and after the state's incursions against interests in liberty or property. By this shorthand, the Court distinguished between that preventive process which must be provided before, and that remedial process in lieu

thereof which constitutionally may be provided after a denial of recognized rights.

In the context of random, unauthorized constitutional torts, this shorthand is useful. *See Parratt,* 451 U.S. 527, 101 S.Ct. 1908; *Daniels,* 748 F.2d 229. When we speak of a denial of liberty by official state policy or procedure, however, it is confusing and perhaps meaningless to speak of predeprivation or postdeprivation due process, because if a challenged loss of liberty was preceded by a due process hearing, there has been no constitutional deprivation. Process which precedes a loss of liberty obviously prevents a constitutional violation. Process which follows the loss of liberty can only provide a substitute remedy, usually money damages.

As *Parratt* and *Hudson* make clear, random and unauthorized deprivations of property by state prison officers, because they are random and unauthorized, cannot be prevented by due process hearings. This is the rationale for *Parratt*'s rule that a remedial hearing after the injury can provide due process in a narrowly limited class of cases. *Parratt* and *Hudson* did not decide, and we do not reach the question, whether the availability of some remedial relief in state court might be imposed as a bar to federal relief under § 1983 in the myriad fact situations that might present themselves in other cases against state and local government officials. *Parratt* and *Hudson* dealt with relatively minor infractions of prisoners' interests in their personal property, and did not deal with official assaults, batteries or other invasions of personal liberty. *Cf. Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1940, 85 L.Ed.2d 254 (1985).

■ Moreover, where the injury is the product of the operation of state law, regulation, or institutionalized practice, it is neither random nor unauthorized, but wholly predictable, authorized, and within the power of the state to control. In such cases, the state may not take away the protected interest without a hearing in advance of the injury. *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. The state, in *Logan,* had destroyed the plaintiff's property interest in employment by failing to convene a hearing within the time mandated by the same statute that had created the interest. The Supreme Court noted that Logan was not challenging the commission's error, but was challenging the established state procedure itself which destroyed his rights without giving him an opportunity to be heard.

■ It is not every erroneous administration of state law that results in a denial of due process. For example, an innocent person can be imprisoned following a trial in which due process was scrupulously observed. Haygood argues that the denial of liberty without due process occurs when a prison term is extended or a release date bypassed without a hearing. When the federal court balances the individual's liberty interest against the state's interest in the efficient administration of its indeterminate sentence scheme, the balance weighs heavily in favor of liberty. In the balancing process, the specific dictates of due process generally require consideration of three factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. As the court observed in *Logan,* absent the necessity of quick action by the state or the impracticability of providing any preventive process, a remedial hearing would be constitutionally inadequate. 455 U.S. at 436, 102 S.Ct. at 1158, *citing Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914.

■ In the context of the facts of the case at bar, Haygood served most of his time in custody executing sentences pronounced by courts exercising the essence of due process of law. Haygood continued to serve time in custody after his correct

release date had passed because his keepers did not believe that he was entitled to be released. Whether this behavior on the part of his keepers was negligent or intentional, Haygood's keepers knew that he was protesting his retention in custody. The officers believed that their understanding of the statutes was superior to his. Haygood's response was habeas corpus. This took time. In the ordinary course of state court litigation, Haygood established, nearly five years after he should have been released and 17 months after his protests were known, that his view of the matter was more nearly correct than was that of his keepers.

The record in Haygood's case revealed that he had been afforded due process before each of his sentences was imposed. Thus he was properly convicted of escape, and properly sentenced. The denial of due process occurred when state officers, through established interpretations of the regulations for setting release dates, without affording Haygood an opportunity to be heard, chose to extend his custodial period. This de facto government policy gave rise to a § 1983 claim against Records Officers Cranke and Seymour approximately seventeen months before Haygood's litigation established the proper release date. When Haygood finally, by means of habeas corpus, came before the state Supreme Court, he obtained the judgment holding that he should have been released five years earlier. This was remedial, or post-deprivation, relief in part at least, but it did not satisfy the *Logan, Morrissey,* and *Mathews* line of cases that require a hearing before the rights are taken away. For these reasons, we hold that Haygood has stated a § 1983 claim for damages for denial of liberty without due process of law. The remaining question is whether the defendants still in the case had a qualified immunity defense as a matter of law, or whether a triable issue of fact remained to be resolved.

There was no affirmative state regulation which required the defendants here to calculate Haygood's prison term in the manner they chose. Their conduct was not, therefore, mandated by law. Rather, the prison officials' actions were part of a continuous process that was responsive to the Adult Authority policies. The Adult Authority has been released from the case. The two clerical defendants remaining in the case employed formulae, provided by their superiors, to calculate Haygood's term. And, while those formulae were not mandated by law, these defendants testified that they calculated Haygood's term in a manner consistent with standard operating procedures, and responded to his numerous inquiries in accord with their general practice and understanding of their instructions. The Adult Authority's internal procedures not only permitted but also apparently approved these officials' conduct in repeatedly concluding their calculations with an erroneous release date. These facts at least require a consideration of the qualified immunity defense discussed in *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).

### Qualified Immunity Defense

Even when the state government has done wrong, the officials who caused the injury can be shielded from liability if a defense is available under § 1983 (*e.g.,* qualified immunity). Even the intentional deprivation of constitutional rights by state officials can be excused when those officials, in the exercise of reasonable good faith, believe their action or inaction to be lawful. *See Albers v. Whitley,* 743 F.2d 1372, 1376 (9th Cir.1984), *cert. granted,* —— U.S. ——, 105 S.Ct. 2700, 86 L.Ed.2d 716 (1985); *Peraza v. Delameter,* 722 F.2d 1455, 1457 (9th Cir.1984); *Burgwin v. Mattson,* 522 F.2d 1213, 1214 (9th Cir. 1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 879, 47 L.Ed.2d 98 (1976). *See also Anderson v. Central Point Sch. Dist. No. 6,* 746 F.2d 505 (9th Cir.1984).

The district court in substance submitted to the jury the question whether the defendants acted reasonably when they responded to Haygood's inquiries. *Haygood,* 527 F.Supp. at 823. The court did not have

the benefit of *Harlow* when it instructed the jury, but it gave substantially the defendants' requested instruction on good faith and reasonable conduct when it told the jury:

That is to say, the law will charge a person with notice and knowledge of whatever he would have learned, upon making such inquiry as it would have been reasonable to expect him to make under the circumstances.

Knowledge or notice may also be established by circumstantial evidence. If it appears that a certain condition has existed for a substantial period of time, and that (the defendant) had regular opportunities to observe the condition, then you may draw the inference that he had knowledge of the condition.

If after considering all of the circumstances as they reasonably appeared at the time when the defendant acted, it appears to you that a defendant reasonably believed that he was discharging the duties of his office and that the defendant acted in good faith on the basis of these beliefs, then his reasonable belief and good faith action would constitute a defense to the plaintiff's claims.

The jury in this case, after considering the court's instructions on qualified immunity, found for Haygood and decided that his damages against Cranke should be $640, and his damages against Seymour should be $1,450. These modest amounts awarded for some 17 months of extra time in prison after release was demanded do not reflect that the jury was prejudiced against the defendants by any imperfection in the instructions. The verdict did reflect the considered judgment of a jury that Frank Haygood had been wronged under color of law by two records officers who knew or should have known that he was entitled to be released earlier than he was released. Given the judge's instruction, the jury must have considered some element of good faith in mitigation of damages, and also may have considered that these two defendants were relatively small cogs in the machine that malfunctioned. In any event, no useful purpose would be served by sending the case back for another trial on the qualified immunity defense at substantial expense to both parties when the plaintiff has not cross-appealed.

## Conclusion

A prisoner's petition for damages for excessive custody can be a legitimate § 1983 claim. A court's first task is to determine whether *Parratt* (random act) or *Logan* (official practice and procedure) controls. If the wrongful taking of liberty results from either affirmatively enacted or de facto policies, practices or customs, the court must determine when the responsible state officers received notice of a claim that a wrong was being done. When an official with the authority to rectify an erroneous practice receives notice of the wrongful practice and its harmful consequences, due process requires the state to provide a hearing before a further denial of liberty can be said to be free from § 1983 liability.

We conclude, therefore, that Haygood was deprived of his liberty under color of law. The *Logan,* rather than the *Parratt* rules apply, and Haygood has a cause of action under § 1983 for denial of liberty without due process, subject to the qualified immunity defenses.

The error in submitting the Eighth Amendment claim without an instruction requiring proof of deliberate indifference to the rights of the prisoner was not prejudicial to these defendants in light of the record as a whole and does not justify a new trial.

Affirmed.