# CIRCUIT COURT OF THE CITY OF NORFOLK

David Quigley

    v.

Robert McCabe,
Sheriff of the
City of Norfolk, *et al.*

November 30, 2015

Case No. (Civil) CL14-5610

By JUDGE EVERETT A. MARTIN, JR.

The plaintiff's complaint arises out of an injury he claims to have received while an inmate at the Norfolk City Jail. He complains that doctors at the jail "refused to provide [him] with any reasonable medical care," Complaint ¶ 7, and that "the defendants provided little to nothing in the way of medical services." Complaint ¶ 8. He claims to have suffered a brain injury and broken bones and to have permanent bodily injury and disfigurement. Complaint ¶¶ 6, 19. He asserts six rights of action in four counts. Two doctors were originally named as defendants, but he suffered a nonsuit as to them on August 28. The Sheriff demurs to all counts and has filed a plea in bar to Count I.

*Breach of Statutory and Common Law Duties (Count I)*

The plaintiff alleges there is a statutory duty imposed on a sheriff to provide medical care to prisoners. Code of Virginia § 53.1-126, upon which he relies, provides in part:

> The sheriff . . . shall purchase at prices as low as reasonably possible all foodstuffs and other provisions used in the feeding of jail prisoners and such clothing and medicine as may be necessary. Nothing herein shall be construed to require a sheriff . . . to pay for the medical treatment of an inmate for any injury, illness, or condition that existed prior to the inmate's

confinement . . . except that medical treatment shall not be withheld for any communicable diseases, serious medical needs, or life threatening conditions. Invoices or itemized statements of account from each vendor of such foodstuffs, provisions, clothing, and medicines shall be obtained by the sheriff . . . and presented for payment to the governing body of the city . . . which shall be responsible for the payment thereof. He shall certify on each statement or invoice that the merchandise has been received and that the vendor has complied with the terms of the purchase.

He also claims a common law duty under *Dabney v. Taliaferro*, 25 Va. (4 Rand.) 256 (1826). The Sheriff admits he has a statutory duty to provide medical care to prisoners, but he claims he cannot be liable for the medical negligence of independent contractor-physicians. Thus I need not decide whether the statute relied upon creates a private right of action or is merely for the administration of the government. The Sheriff does not seem to dispute that he has a common law duty. Both parties agreed at the hearing that Exhibit 1 is an authentic copy of a contract the Sheriff had with Correct Care Solutions, L.L.C., to provide medical care for prisoners at the time complained of.

The plaintiff claims the Sheriff cannot delegate these duties and he is thus liable for the neglect or indifference of the physicians. In *Dabney*, upon which he relies, an incarcerated runaway slave was injured when not provided with warmth and bedding in the winter. The sheriff claimed he had turned over the management of the jail to one Thornton and that Thornton alone was answerable for the damage. It appears that issue was submitted to the jury, which found the sheriff liable. In dictum, the court held the sheriff would be liable for the plaintiff's damage even if he had "regularly appointed Thornton his deputy." 25 Va. at 263.

The plaintiff confuses the roles of jailer and physician then and now. At the time *Dabney* was decided, the law held that "Gaolers are also servants of the sheriff, and he must be responsible for their conduct. Their business is to keep safely all such persons as are committed to them by lawful warrant. . . ." 1 W. Blackstone, *Commentaries*, 346 (1765); W. W. Hening, *New Virginia Justice*, 393 (1825); 1 Va. Rev. Code (1819) 235, § 32. At that time, it appears the courts appointed physicians to attend the prisoners, 1 Va. Rev. Code (1819) 608-09, §§ 34, 35, although the jailer had the duty "in case of sickness of any prisoner, to give and procure for him adequate nursing and attendance." 1822-23 Acts of Assembly, c. 30, p. 31; Supplement to Va. Rev. Code (1833), 204, § 7. It also appears there was then no statutory licensing requirement for physicians.

The failing in *Dabney* was the provision of warmth and bedding in winter. No education or training is necessary to discharge that duty. The rendering of medical care requires extensive education and training. Va.

Code § 54.1-2929 *et seq.*; 18 VAC 85-20. It is a Class 1 Misdemeanor to practice medicine without a license. Va. Code § 54.1-111(1), (4). The sheriff and the jailer have a duty to make medical care available to a prisoner; the physician has the duty to render it. The sheriff and the jailer cannot diagnose, treat, and attempt to cure broken bones and a brain injury; the physician does that. A physician has a duty to use the degree of skill and diligence in the care and treatment of his patient that a reasonably prudent physician in his field of practice would have used in the circumstances. Va. Code § 8.01-581.20; *Reed v. Church,* 175 Va. 284, 85 S.E.2d 295 (1940). A sheriff can have no such duty. The jailer is the servant of the sheriff; the physicians here are not. Indeed, given the duty a physician owes his patient, it is difficult to imagine he could be the servant of the sheriff as the sheriff would then have the power "to control not merely results, but the progress and details of the work." *Norfolk & W. Ry. v. Johnson,* 207 Va. 980, 983, 154 S.E.2d 134, 136 (1967).

The Complaint and Exhibit 1 establish the Sheriff made medical care available to the plaintiff and that the physicians were not the Sheriff's servants, but independent contractors. I sustain the demurrer and plea in bar to Count I.

### *Violations of Article I, §§ 9 and 11, of the Constitution of Virginia (Count II)*

The plaintiff complains the Sheriff's negligence constitutes cruel and unusual punishment and a denial of due process of law. These provisions of the Virginia Declaration of Rights have been in effect since June of 1776, and the plaintiff has not cited one case from any Virginia court in the intervening 238 years that recognizes a private right of action under either, except for claims of damage to or taking of property. Notwithstanding the generalities stated in some decisions of our Supreme Court about what provisions of the Declaration of Rights are "self-executing," the failure of any court to recognize such a private right of action over such a long period is conclusive proof that no such right of action exists.

I have previously held no private right of action exists under § 11 of the Declaration of Rights for a claim of false imprisonment by police officers. *Young v. Norfolk,* 62 Va. Cir. 307 (2003). Neither the plaintiff's brief nor his arguments persuade me differently.

*Ogunde v. Prison Health Services,* 274 Va. 55, 645 S.E.2d 520 (2007), upon which the plaintiff relies, only held that it was error if the circuit court dismissed a claim under § 9 of the Declaration of Rights *sua sponte* because of the plaintiff's failure to comply with the Virginia Prisoner Litigation Reform Act. Va. Code § 8.01-689 *et seq.* The defendants had withdrawn their objections to Ogunde's constitutional claim when the circuit court dismissed it, and the dismissal order did not state the reason for the dismissal of the claim. I sustain the demurrer to Count II.

*Failure To Train (Count III)*

The plaintiff claims the Sheriff had a duty to train the medical staff at the jail so that a prisoner with the plaintiff's condition "would be taken to the hospital forthwith." Complaint ¶ 21. In his brief, he cites only federal cases brought under 42 U.S.C. § 1983.

I am aware of no common law duty a sheriff has to train a physician. Furthermore, given the rigorous educational and training requirements, above cited, to be licensed to practice medicine, a sheriff is not qualified to train a medical doctor in the practice of his profession. I sustain the demurrer to Count III.

*De Facto Policy Not To Provide*
*Medical Treatment to Prisoners (Count IV)*

The plaintiff claims the Sheriff "had a *de facto* policy which discouraged his staff to take inmates who were in the plaintiff's condition to the hospital." Complaint ¶ 24. For support of this right of action, he again cites only federal cases under 42 U.S.C. § 1983.

The standard of a duty in tort in Virginia arises only by statute or common law; it does not arise by rules or policies adopted by private persons, *Virginia R. & P. Co. v. Godsey*, 117 Va. 167, 168, 83 S.E. 1072 (1915), or executive agencies, *Pullen v. Nickens*, 226 Va. 342, 310 S.E.2d 452 (1983). I sustain the demurrer to Count IV.