782 F.2d 790
 David Allen MANN, Plaintiff-Appellant,
v.
The CITY OF TUCSON, DEPARTMENT OF POLICE; Peter Ronstadt;
Anthony Bulver; Brad Cochran; Cathy Filippelli; Franklin
S. Rau; Sergeant Starch; Rita Jett; Jerome S. Shull;
Jerome S. Shull & Associates; Shannon Park Apartments,
limited partnership, Jerome Shull; Terry Regnier;
Trayner-Murray, Inc.; Jeffrey Schulten; Detective McCoy;
Emory Hanson, Carolyn Hanson; S. Leonard Sheff; Nuart
Camera, Inc. and Carl Holzman, Defendants-Appellees.
 No. 85-1847.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Dec. 2, 1985*.
Decided Feb. 10, 1986.
 
 David Allen Mann, Florence, Ariz., for plaintiff-appellant.
 Stephen Kimble, Kimball, Gothreau, Nelson & Connon, Michael P. Callahan, Ronald Stolkin, Whitehall, Stolkin, Karp, West, Weiss & Berger, Tucson, Ariz., Michael Herzog, Phoenix, Ariz., Keith W. Krosese, Chandler, Tullar, Udall & Redhair, S. Leonard Scheff, Tucson, Ariz., Paul M. May, Fort Lauderdale, Fla., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before BROWNING, Chief Judge, SNEED and HUG, Circuit JudgesPER CURIAM:
 
 
 1
 Mann, a pro se litigant, appeals from the dismissal of his action alleging claims under 42 U.S.C. Sec. 1983 (1982), as well as various pendent state causes of action, on the ground that the federal claims were barred by Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). We reverse.
 
 
 2
 Mann sued the City of Tucson, various members of the Tucson and Fort Lauderdale Police Departments, and various private individuals for deprivation of property without due process, unreasonable search and seizure, and on various state causes of action (including conversion and defamation), all arising from searches of his apartment and the seizure of property therein between June 11 and July 14, 1982. He alleged the following facts.
 
 
 3
 On June 11, officers of the Tucson police department (defendants Anthony Bulver, Bradley Cochran, Cathy Filippeli, Franklin Rau, David Storch, and derivatively, Chief of Police Peter Ronstadt) unlawfully searched Mann's Tucson apartment, seizing photo-optical equipment and file drawers containing cancelled checks and other property. The police were aided by defendant Carl Holzman, Mann's former employer at NuArt Camera, Inc., who helped inventory the photo-optical equipment, allegedly stolen by Mann from NuArt. The photo-optical equipment was subsequently released to him for purposes of photographing and storage as evidence. Holzman also participated in the search and seizure of the file drawer.
 
 
 4
 Between June 11 and July 1, some or all of defendants Carolyn and Emory Hanson (the managers of Mann's apartment building), Jerome A. Shull (of defendants Jerome A. Shull and Associates, Inc., and Shannon Park Apartments Co., the owners of the building), and S. Leonard Scheff (the attorney for Schull and Associates, Inc. and Shannon Park) entered Mann's apartment and removed audio and video equipment and furniture. Defendant Bulver was present during at least some of these removals and did nothing to stop them.
 
 
 5
 Meanwhile, on June 25, defendant Terry Regnier of defendant Traynor-Murray, Inc. (for whom Mann had worked as a consultant) sent defendant Brian McCoy (of the Fort Lauderdale, Florida, police department) a list of crystal items allegedly "taken" by Mann. Regnier later stated in a police report that Mann had stolen the crystal. On June 30, defendant Jeffrey Schulten (of the Fort Lauderdale police department) wrote to the Tucson police department, advising that a collection of crystal items had been stolen. On July 14, officer Bulver, with the consent of Emory Hanson, performed an unlawful search of Mann's apartment and seized a collection of crystal items which was released to Regnier at some later, unspecified date.
 
 Section 1983 Claims
 
 6
 The district court dismissed the section 1983 claims in light of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The court held these claims were "based on actions occurring not as a result of established state procedures but from the alleged unauthorized failure of the defendants in obtaining and executing a search warrant," and that adequate post-deprivation state remedies are available to Mann "which can satisfy his right to due process and fully compensate him for any loss incurred." Mann does not contest the dismissal of his procedural due process claims under Parratt, but contends the dismissal of his substantive due process claims, based on a violation of the fourth amendment protection against unreasonable searches and seizures, was error.
 
 
 7
 Parratt 's rationale is that a deprivation of property does not constitute a deprivation of procedural due process if it is impracticable for the state to provide procedurally adequate pre-deprivation process (because the deprivation was procedurally random and unauthorized), and the state does provide adequate post-deprivation remedies. The Court stated, "The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' " Mitchell v. W.T. Grant Co., 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974) (quoting Phillips v. Commissioner, 283 U.S. 589, 596-97, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931)), quoted in Parratt, 451 U.S. at 540, 101 S.Ct. at 1915.
 
 
 8
 The Parratt rationale does not apply to a denial of substantive due process, for in such a case the deprivation is the taking of property or liberty itself, not the process by which the taking is accomplished, and the availability of neither pre- nor post-deprivation process is relevant. As Justice Blackmun stated, concurring in Parratt,I also do not understand the Court to intimate that the sole content of the Due Process Clause is procedural regularity. I continue to believe that there are certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process.
 
 
 9
 451 U.S. at 545, 101 S.Ct. at 1918.
 
 
 10
 Although this court has not squarely addressed the question whether Parratt applies to violations of substantive due process, we have decided such substantive claims without reference to Parratt, (see, e.g., Albers v. Whitley, 743 F.2d 1372 (9th Cir.1984), cert. granted, --- U.S. ----, 105 S.Ct. 2700, 86 L.Ed.2d 716 (1985) (cruel and unusual punishment); McKenzie v. Lamb, 738 F.2d 1005 (9th Cir.1984) (unlawful arrest)), and most recently, in Haygood v. Younger, 769 F.2d 1350, 1354-57 (9th Cir.1985) (en banc), we discussed the application of Parratt to a procedural due process claim, but not to an eighth amendment claim, in affirming a general finding of section 1983 liability based on both.
 
 
 11
 The Fifth Circuit has concluded that Parratt does not apply to substantive due process claims. See Augustine v. Doe, 740 F.2d 322, 325-27 (5th Cir.1984) (unlawful entry into home to effect arrest); Thibodeaux v. Bordelon, 740 F.2d 329, 333 (5th Cir.1984) (cruel and unusual punishment). Other circuits appear to be of the same view. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 870-72 (7th Cir.1983) (unlawful seizure of property); Williams v. Red Bank Board of Education, 662 F.2d 1008, 1024 n. 17 (3rd Cir.1981) (first amendment violation, although court abstains on other grounds); Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir.1981) (mentioning Parratt, but not applying it to claim of cruel and unusual punishment).
 
 
 12
 We conclude the district court erred by dismissing Mann's substantive constitutional claims under Parratt. However, dismissal of these claims against defendants other than the Tucson police defendants was proper for other reasons. The substantive constitutional violation charged consisted of two unlawful searches of Mann's apartment. The search was performed by the Tucson police officers. All but two of the other defendants are private persons who allegedly instigated, aided, or participated in the searches. Under Arnold v. IBM Corp., 637 F.2d 1350, 1356-57 (9th Cir.1981), in order to establish the requisite proximate cause between the conduct of private persons and searches in violation of section 1983, a plaintiff must prove the private individuals exercised control over the decisionmaking in a police investigation. Mann has failed to allege that these other defendants controlled the investigation or directed that the searches be conducted, and the facts alleged would not support such a claim. For this reason, the section 1983 claims against these private defendants were properly dismissed.
 
 
 13
 Similarly, the section 1983 claims against officers McCoy and Schulten of the Fort Lauderdale police department were properly dismissed because Mann failed to state a claim against them. Mann alleged only that McCoy received a letter from Regnier containing a list of crystal items allegedly stolen by Mann, and that Schulten conveyed the same (allegedly false) information to the Tucson Police Department. Mann alleged these acts were in violation of a duty on the part of the officers to employ due diligence to make certain the information was correct.
 
 
 14
 Assuming arguendo that such a duty exists, Mann has alleged only that the officers acted negligently. Mere negligence on the part of state officials causing injury to life, liberty or property does not violate the due process clause of the fourteenth amendment. Daniels v. Williams, --- U.S. ---, 106 S.Ct. 662, 666-67, 88 L.Ed.2d 662 (1986). Although something more than mere negligence may violate due process, see id. at 667 n.3, any allegations that might be construed as charging conduct by McCoy and Schulten beyond mere negligence are entirely conclusory and unsupported by any facts alleged in the complaint. Although we must, in general, accept the facts alleged in the complaint as true, wholly vague and conclusory allegations are not sufficient to withstand a motion to dismiss. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).
 
 State Law Claims
 
 15
 The district court dismissed Mann's state law causes of action on the ground it lacked pendent jurisdiction over those claims. Mann argues the court had diversity jurisdiction.
 
 
 16
 In his complaint, Mann alleged that "[t]his civil suit is also brought in United States District Court by reason of Diverse Citizenship with a claim exceeding ten thousand dollars ($10,000)." Although he did not specifically allege the citizenship of any of the defendants, it is possible to identify the states of their residence as Arizona or Florida from the complaint as a whole. Similarly, Mann failed to specifically allege his own citizenship, but did allege he was a "prisoner on sentence in the California Department of Corrections" who was "in the temporary custody of the State of Florida at the time of this filing," and gave a California mailing address.
 
 
 17
 Although a plaintiff must affirmatively allege essential elements of diversity jurisdiction, In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 404 n. 4 (9th Cir.1983), we think plaintiff's complaint was sufficient, making due allowance for the fact that we must hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam).
 
 
 18
 The defendants claim complete diversity was lacking because Mann was a citizen of Arizona at the time the events forming the basis of the action transpired. Existence of diversity jurisdiction is determined by the citizenship of the parties at the time of the filing of the complaint, not at the time the cause of action arose or after the action is commenced. Smith v. Sperling, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957); Prakash v. American University, 727 F.2d 1174, 1179 n. 28 (D.C.Cir.1984); Hill v. Rolleri, 615 F.2d 886, 889 (9th Cir.1980). Mann alleged he was a California resident at the time the suit was filed.
 
 
 19
 Defendants Schulten and McCoy point out that Mann failed to allege a sufficient amount in controversy as to them. Mann contends that this was a typographical error. Mann may amend his complaint to remedy this defect.
 
 
 20
 Mann's other contentions are meritless.
 
 
 21
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 22
 SNEED, Circuit Judge, concurring in the result:
 
 
 23
 I concur in the result reached by the majority opinion. I write because in my opinion there exists substantial uncertainty regarding both the analytic structure of 42 U.S.C. Sec. 1983 jurisprudence and the role civil rights litigation pursuant to section 1983 should play in our constitutional order. This uncertainty cannot be dispelled by a single concurring-in-the-result opinion. My purpose merely is to describe a problem that in my view is fundamental and to suggest an approach that, because of existing precedents, only the Supreme Court can undertake. This is done in full awareness that the effort may be considered presumptuous. It is not intended to be so.
 
 
 24
 The problem is what should be the significance, if any, of the availability of a remedy in the state courts or administrative agencies for an injury cognizable under section 1983 on the right of the aggrieved party to prove the claim in federal court? A possible answer is that such availability should have no significance. The supporting reasoning would start with the proposition that the injury was the result of a violation of the Constitution of the United States and whether the state provided a remedy for the injury should be no more relevant than the fact that an act is criminal under both federal and state law is to the existence of federal criminal jurisdiction. In both instances the federal court should be available to the complainant whether it be the aggrieved individual or the United States. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), partially overruled, Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), provides substantial support for this point of view.[1]
 
 
 25
 Concerns having their source in federalism suggest hesitancy in fully embracing this point of view. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), rest in part on such concerns as do abstention doctrines whatever their form.[2] These concerns, if implemented fully in the context of section 1983 litigation, would make resort to available state remedies a prerequisite to a federal claim under section 1983. Monroe v. Pape precludes such a broad rule, however. On the other hand, the Monroe v. Pape wall is not unbroken. Putting aside for the moment the abstention breach, the more significant opening[3] began with Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). That case examined the procedural safeguards schools must apply to protect students from improper corporal punishment. The Court's holding that the safeguards provided were adequate is not important for our purposes. It was of note, however, that one of the factors in the Court's analysis was the presence of state common-law remedies for wrongful acts by school employees. The Court noted that the presence of these remedies limited the potential for abuse and therefore the need for imposition of federal constitutional safeguards. Ingraham led logically to Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).
 
 
 26
 In Parratt a prisoner in segregated confinement in a Nebraska prison suffered the loss of a hobby kit that he had ordered from a mail order business. The kit was never located nor was it ever clear exactly how it was lost. Nebraska had a tort claims procedure that would have compensated the prisoner for the loss upon proof that he had suffered a tort at the hands of the prison officials. Nonetheless, the prisoner brought a section 1983 claim alleging that state officials under the color of state law had deprived him of "property, without due process of law." The proscription against deprivation "of life, liberty, or property, without due process of law" appears in both the Fifth and Fourteenth Amendments. Section 1 of the latter provides:
 
 
 27
 All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
 
 
 28
 Because the loss of the hobby kit was unexplained, it would have been nonsense to insist that a constitutional injury existed because the state provided no predeprivation due process. The Parratt Court could have concluded, however, that the unexplained loss was itself a deprivation of property lacking due process with the consequence that Taylor's complaint stated a claim cognizable under section 1983. The Court did not do this, however. Instead, it examined the availability of a postdeprivation remedy and, having found that Nebraska provided one, concluded that the deprivation was not "without due process of law."
 
 
 29
 Parratt was subsequently underscored by the Court in Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which applied the Parratt analysis to intentional acts of state employees. Palmer, the plaintiff in the section 1983 action, argued "that, because an agent of the state who intends to deprive a person of his property 'can provide predeprivation process, then as a matter of due process he must do so.' " Id., 104 S.Ct. at 3204 (quoting Brief for Respondent at 8) (emphasis in Brief for Respondent). This argument was rejected and the Court stated:This argument reflects a fundamental misunderstanding of Parratt. There we held that postdeprivation procedures satisfy due process because the State cannot possibly know in advance of a negligent deprivation of property. Whether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the State is in a position to provide for predeprivation process.
 
 
 30
 Id. (emphasis in original).
 
 
 31
 A law student given only Parratt and Hudson and instructed to extract the governing principle of these two cases would have deserved a good grade had he responded in this fashion:
 
 
 32
 When a state employee, without authority and under circumstances unforeseeable by the state, deprives another of property, either negligently or intentionally, the existence of an injury cognizable under section 1983 turns on whether the state's applicable postdeprivation processes conform to the norms of due process.
 
 
 33
 This response properly directs attention to the fact that the deprivation was of property, the absence of official involvement in the deprivation on the part of the state, the unforeseeability of the deprivation by responsible state authorities, and the constitutional suitability of the available postdeprivation remedies. This student, if somewhat sophisticated, would hasten to add that in both Parratt and Hudson certain Justices took pains to point out that those cases should not be extended beyond their precise limits. Justices Blackmun and White, for example, suggested in Parratt that it did not apply to deprivations of life or liberty and "certain governmental actions that, even if undertaken with a full panoply of procedural protection, are, in and of themselves, antithetical to fundamental notions of due process." 451 U.S. at 545, 101 S.Ct. at 1918. Also in Hudson it is likely that a majority of the Justices, had they been required to do so, would have held that a deprivation of the interests protected by the Fourth Amendment would be actionable under section 1983 without regard to the existence of postdeprivation state remedies. See 104 S.Ct. at 3205 (O'Connor, J., concurring); id. at 3207 (Stevens, J., concurring in part and dissenting in part) (joined by Brennan, Marshall, and Blackmun, JJ.)
 
 
 34
 These reservations with respect to the limits of the relevance of postdeprivation state remedies drew strength from Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), which has been read to mean that Parratt is inapplicable to deprivations of property authorized by irrational state policies or procedures. See Hudson v. Palmer, 104 S.Ct. at 3203 n. 13 (opinion of the Court); id. at 3208 n. 4 (Stevens, J., concurring in part and dissenting in part). Additional limits are suggested by the following passage appearing in Augustine v. Doe, 740 F.2d 322 (5th Cir.1984), a case on which the majority opinion heavily relies:
 
 
 35
 Parratt v. Taylor is not a magic wand that can make any section 1983 action resembling a tort suit disappear into thin air. Parratt applies only when the plaintiff alleges a deprivation of procedural due process; it is irrelevant when the plaintiff has alleged a violation of some substantive constitutional proscription. Further, in the context of procedural due process, Parratt applies only when the nature of the challenged conduct is such that the provision of predeprivation procedural safeguards is impracticable or infeasible.
 
 
 36
 Id. at 329.
 
 
 37
 While it may very well embrace even an inadvertent violation of the Fourth Amendment, the line between a "substantive constitutional proscription"[4] and procedural due process is less helpful than might appear at first glance, however. Consider, for example, an assault and battery by a state official upon, first, an ordinary citizen, and, second, a prisoner in a state prison. In both instances the victim could base his claim on a deprivation of liberty without due process of law. A threshold issue in each case would be whether Parratt analysis was available and, if so, whether its requirements were met. The prisoner victim, however, also could couch his complaint as a violation of the Eighth Amendment's proscription against cruel and unusual punishment and in this manner render Parratt inapplicable. Moreover, the prisoner's complaint could state a claim under both procedural and "substantive" due process as, indeed, did Mann's complaint in this case. Why should the Parratt analysis be available under one claim and not under the other? In this case the majority appears to hold that it is applicable under neither. However, in Augustine v. Doe the Fifth Circuit carefully distinguished the procedural due process claim from the "substantive" due process Fourth Amendment claim and acknowledged the applicability of Parratt to the former. 740 F.2d at 327-29. In sum, the flexible manner in which constitutional injuries can be stated strongly suggests that the procedural-substantive due process distinction has no roots in logic.[5]
 
 
 38
 Nor are its textual underpinnings firm and solid. The Fifth Amendment, as well as the Fourteenth, contains procedural due process language. Its presence in the Fourteenth amounts to explicit incorporation of the language, and the rights secured thereby, of the Fifth. The incorporation by judicial decision of the remainder of the Bill of Rights perhaps is by way of the Due Process Clause of the Fourteenth or perhaps not.[6] Even if a particular amendment, the First, for example, were incorporated without reference to any specific language of the Fourteenth Amendment, there exists no reason based on the language of the Fourteenth Amendment to limit Parratt to claims based exclusively on procedural due process grounds. The language of section 1 of that Amendment makes this clear: "nor shall any State deprive any person of life, liberty, or property, without due process of law." This language treats all three types of interests exactly the same. If due process, properly construed, exists, it should follow that there is no violation of the Due Process Clause of the Fourteenth Amendment. For this reason, it is difficult to justify different results based on a distinction between different types of interests.
 
 
 39
 This "substantive due process" limitation on the use of Parratt, as well as other limitations such as those discernible in the writings of various Supreme Court Justices and in the en banc trilogy of this court, see Haygood v. Younger, 769 F.2d 1350 (9th Cir.1985) (en banc); Bretz v. Kelman, 773 F.2d 1026 (9th Cir.1985) (en banc); Piatt v. MacDougall, 773 F.2d 1032 (9th Cir.1985) (en banc), probably have their principal source in uncertainty about how to prevent Parratt from drastically reducing the power of the courts to afford redress to those injured by the unconstitutional acts of those acting under color of state law. This concern is not misplaced. Applied woodenly Parratt would come to mean that to state a valid section 1983 claim the plaintiff would be required to plead that the available state remedies for injuries caused by unconstitutional acts committed by those acting under color of state law were inadequate for one reason or another. While such a result would strengthen the "federal" character of our Nation, the omnipresence of the half-remembered history of the struggle that brought about the Fourteenth Amendment, as well as this century's civil rights movements, restrains the judicial hand.
 
 
 40
 At the same time there exists a growing belief that section 1983 litigation is too much concerned with the ordinary torts that inevitably will mar the functioning of massive state and local governments. No doubt Parratt, in part, was a response to this belief. So I return to the question posed at the beginning: "What should be the significance, if any, of the availability of a remedy in the state courts or administrative agencies for an injury cognizable under section 1983 on the right of the aggrieved party to prove the claim in federal court?"
 
 
 41
 I suggest that a satisfactory answer would commence with Logan v. Zimmerman Brush Co., 455 u.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Thus, the first portion of the answer would be that the Parratt analysis is irrelevant to section 1983 claims based upon an alleged unconstitutional state law, policy, procedure, pattern, or practice. The basis for this rule would be that the state has forfeited its opportunity under its procedures to provide an appropriate remedy for wrongs having the state's own imprimatur. In terms of the Constitution, the existence of the unconstitutional state policy prevents the citizen from receiving "due process of law," regardless of the purity of the procedures themselves. Moreover, the rule would be reasonably simple and similar to the rule now applied in Logan -type situations. The extension to "patterns and practices" may prove troublesome, but should be manageable.
 
 
 42
 The second portion of the answer is to extend Parratt to all other constitutional injuries cognizable under section 1983. This would embrace all unforeseeable deprivations of life, liberty, and property as well as all unplanned violations of "substantive" due process rights. The justifications are that the state by its conduct, in the absence of an application of respondeat superior, has not forfeited its opportunity to provide a remedy, and that Parratt 's application would remove from federal courts many fairly simple "tort" cases. Accurate estimates of the number of such cases are not available to me; but it is likely that the number is quite large. A scholar recently suggested a restructuring of section 1983 that bears a strong resemblance to these two suggestions. See Zagrans, supra note 1. The principal difference is that Professor Zagrans would overrule Parratt entirely and limit section 1983 to instances in which "the offending conduct ... [was] ... authorized by state law or custom." Id. at 589. This, I suspect, is too big a bite for the Supreme Court alone to take. Perhaps my suggestions are also. However, hope, while at my age it cannot with reason be said "to spring eternal," remains sometimes irrepressible.
 
 
 43
 The foregoing was written shortly before the Supreme Court decided Daniels v. Williams, --- U.S. ----, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and Davidson v. Cannon, --- U.S. ----, 106 S.Ct. 668, 88 L.Ed.2d 668 (1986). Those two cases do not render my suggested approach irrelevant. Rather Daniels and Davidson restrict the scope of section 1983 by holding "that the Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." Davidson, at ----, 106 S.Ct. at 670. This is qualified, however, by the following dictum: "But we need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold, as we do, that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment." Daniels, --- U.S. at ----, 106 S.Ct. at 666.
 
 
 44
 This qualifying dictum perhaps was explicated by Justice Stevens in a concurring-in-the-judgments opinion in which he sketched a tripartite typology of constitutional rights protected by the Due Process Clause of the Fourteenth Amendment, viz. rights secured by the Bill of Rights, the right against arbitrary government actions ("substantive due process"), and the right to fair procedure ("procedural due process"). As Justice Stevens described it, only when a right falls outside the first two categories would it be proper to consider the fairness of either pre- or post-deprivation remedies provided by state law. Such remedies are irrelevant under Monroe v. Pape with respect to the rights embraced by the first two categories. Justice Stevens does not address the possibility of wrongs violating more than one category of rights, mentioned previously, or wrongs falling into different categories depending upon the identity of the victim, also mentioned previously.
 
 
 45
 In sum, Daniels and Davidson overruled that portion, and only that portion, of Parratt v. Taylor that held that a negligent loss of property by state officials acting under color of state law was a "deprivation" of property within the meaning of the Due Process Clause of the Fourteenth Amendment. The circumstances under which it is appropriate to refer to post-deprivation state remedies otherwise remain the same as before--frustratingly imprecise. Whatever enlightenment Justice Stevens might be thought to have brought to the issues appears to reflect only his views--not those of a majority of the court. Therefore, we can draw little comfort from his typology.
 
 
 46
 For this reason my earlier comments remain relevant. This imprecision also makes it impossible to assert that "post-deprivation" state remedies should be examined under the facts of the case before us. Justice Stevens clearly would regard those remedies, if any, as of no consequence. Therefore, I must be guided by this court's previously mentioned trilogy in which the rather clear message was "Apply Parratt only to random and unauthorized deprivations of property by state prison officers." See Haygood v. Younger, 769 F.2d at 1357.[7] Inasmuch as "random and unauthorized deprivations of property" are no longer "deprivations" for purposes of the Due Process Clause, it can be argued that under this circuit's law as written it is inappropriate to consider state law remedies under any circumstances. I doubt that this reflects the view of the Supreme Court; but I cannot demonstrate that it does not. Therefore, I concur in the result reached by the majority in this case.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 3(f) and Fed.R.App.P. 34(a)
 
 
 [1]
 For a rare critical examination of Monroe v. Pape, see Zagrans, "Under Color of " What Law: A Reconstructed Model of Section 1983 Liability, 71 Va.L.Rev. 499, 525-60 (1985)
 
 
 [2]
 See generally 17 C. Wright, A. Miller & E. Cooper Secs. 4241-4248 (1978 & Supp.1985) (discussing the various abstention doctrines)
 
 
 [3]
 For a more detailed discussion of this breach in the Monroe wall, see Zagrans, supra note 1, at 515-22
 
 
 [4]
 In the passage quoted from Augustine, Judge Wisdom uses the phrase "substantive constitutional proscription." The majority here uses the phrase "substantive due process." I much prefer Judge Wisdom's phraseology because I find use of the term "substantive due process" seriously misleading. To me, that term conjures up the use of judicial power to protect rights favored by judges without regard to textual support in the Constitution. See, e.g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905)
 
 
 [5]
 Of course, I recognize that the state's actions might constitute two separate constitutional injuries: first, the cruel and unusual punishment; and second, the failure to provide procedures to remedy losses occasioned by the unlawful punishment. But the issue here is not the existence of a constitutional violation. I question only the necessity of a section 1983 remedy for violations that the state courts stand open to repair
 
 
 [6]
 Many of the incorporation cases explicitly rely on the Due Process Clause of the Fourteenth Amendment. See, e.g., Duncan v. Louisiana, 391 U.S. 145, 148, 88 S.Ct. 1444, 1446, 20 L.Ed.2d 491 (1968) (trial by jury); Washington v. Texas, 388 U.S. 14, 17-18, 87 S.Ct. 1920, 1922-23, 18 L.Ed.2d 1019 (1967) (compulsory process for witnesses); Mapp v. Ohio, 367 U.S. 643, 650, 81 S.Ct. 1684, 1688, 6 L.Ed.2d 1081 (1961) (exclusionary rule); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958) (freedom of association)
 On the other hand, many of the incorporation decisions do not rely explicitly on the Due Process clause. Some, for instance, appear to rely on the amendment as a whole. See Pointer v. Texas, 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965) (confrontation of witnesses); Malloy v. Hogan, 378 U.S. 1, 10, 84 S.Ct. 1489, 1494, 12 L.Ed.2d 653 (1964) (self-incrimination); Everson v. Board of Educ., 330 U.S. 1, 8, 67 S.Ct. 504, 507, 91 L.Ed. 711 (1947) (establishment of religion). Still other cases incorporate Bill of Rights protections into the "liberty" protected by the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940) (free exercise of religion); Gitlow v. New York, 268 U.S. 652, 664, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925) (freedom of speech and press). Finally, in at least one case the Court didn't seem sure at all on what portion of the Fourteenth Amendment its decision rested. See Gideon v. Wainright, 372 U.S. 335, 341, 83 S.Ct. 792, 794, 9 L.Ed.2d 799 (1963) (assistance of counsel; relying on "the Fourteenth [Amendment], or some part of it").
 
 
 [7]
 Obviously the suggested analysis was not employed in the panel opinion in Haygood which, although withdrawn, appears at 718 F.2d 1472 (9th Cir.1983). The panel employed Parratt to conclude that the administrative process, together with the habeas corpus proceedings in the California courts, and the existence of a tort remedy under state law, provided the constitutionally required concurrent and postdeprivation due process. Under the analysis suggested in this concurring-in-the-result opinion the primary issue would be whether the mistake in calculating the sentence of the prisoner plaintiff that resulted in an extension of his sentence for a period somewhat in excess of five years, was the result of state law, policy, procedure, pattern, or practice. A strong argument could be made that the mistake was due to a policy that the state officials well understood and applied precisely as they understood it. On that assumption the plaintiff prisoner under the suggested analysis did in fact suffer an injury cognizable under section 1983 without regard to any remedies provided by state law