833 F.2d 804
 126 L.R.R.M. (BNA) 3307, 56 USLW 2363,
110 Lab.Cas. P 55,945
 UNITED STEELWORKERS OF AMERICA; United Steelworkers of
America, Local 4776; International Association of
Machinists and Aerospace Workers, Lodge No. 1357;
International Brotherhood of Electrical Workers, Local 523;
United Association of Journeymen and Apprentices of the
Plumbing and Pipefitting Industry, Local 741; International
Union of Operating Engineers, Local 428; United
Transportation Union, Local 807; Ronald Rhodes; William
Hunter; William Puffer; Diana Pino Vega; Shea Burkhead;
Amado Gonzalez; Art Galvez; Antonio Santiago; David
Williams; Jose Ortiz; Richard Olea; Jerry Wolgamuth;
Natalie Munoz; Soila Bon; George Bustamante, individually
and on behalf of others similarly situated, Plaintiffs-Appellants,
v.
PHELPS DODGE CORPORATION, a New York corporation; Arizona
Department of Public Safety; R.L. Carson, individually and
as an Arizona Department of Public Safety Officer; Helen
Gilmartin; Pima County, Arizona, a political subdivision of
Arizona; Clarence Dupnik, individually and as Pima County
Sheriff; J.W. Bowman, individually and in official
capacity; R. Benson, individually and in official capacity;
C. Kaylor, individually and in his official capacity; John
Doe Jett, individually and in official capacity; Dan
Ludwickzak, individually and in his official capacity; John
Gilmartin, individually and in his official capacity; Ron
Lee, individually and in his official capacity; David
Allen, individually and in his official capacity; Geoffrey
Cheadle, Jr., individually and in his official capacity;
Kathy Casteel, individually and in her official capacity;
Rita Jett, individually and in her official capacity; James
Sheets, Defendants-Appellees.
 No. 86-2811.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 12, 1987.
Decided Dec. 1, 1987.
 
 Jeffrey Freund, Bredhoff & Kaiser, Washington, D.C., for plaintiffs-appellants.
 James G. Speer, Evans, Kitchel & Jenckes, P.C., Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of arizona.
 Before WRIGHT, FARRIS and NOONAN, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 This case presents the sole question whether sufficient evidence was presented to defeat a motion for summary judgment. Following a bitter strike, the unions representing Phelps Dodge Employees in Ajo, Arizona sued the company, law enforcement officials, and others for conspiring to violate the civil rights of the strikers. The district court granted summary judgment for Phelps Dodge, and the unions appealed. We affirm.
 
 BACKGROUND
 
 2
 Phelps Dodge owns and operates a copper mine and milling plant in Ajo, approximately 80 miles west of Tucson. In 1983, the unions representing those employees went on strike. By all accounts the strike was bitter, dividing the town and resulting in violence by both strikers and non-strikers. Huge demonstrations and violent confrontations met the company's attempt to replace the strikers. In this explosive situation both Pima County Sheriff's Department Officers, and Arizona Public Safety Officers were called into Ajo.
 
 
 3
 During the strike, several strikers were arrested and charged with felonies. Bail was set at $15,000 for each. When they could not post bail they were jailed in nearby Tucson. Other strikers were arrested or cited and charged with misdemeanors.
 
 
 4
 The Steelworkers sued Phelps Dodge, Pima County, the Sheriff and individual Deputies, the Arizona Department of Public Safety and individual officers, individual attorneys of the County Attorney's Office, and the Ajo Justice of the Peace for conspiracy to deprive the strikers and their supporters of their constitutional rights in violation of 42 U.S.C. Sec. 1983. They alleged discriminatory enforcement of the law, arrests without probable cause, and excessive bail.
 
 
 5
 The State Department of Public Safety and its officers, the Justice of the Peace, and the attorneys were dismissed. The district court then granted summary judgment and costs for Phelps Dodge. The Steelworkers appealed, contending that sufficient evidence of a conspiracy was presented to require a jury trial.
 
 ANALYSIS
 THE SUMMARY JUDGMENT STANDARD
 
 6
 This court reviews the grant of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. at 630; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 
 7
 The question of material fact does not have to be resolved conclusively to entitle the nonmoving party to proceed to trial. However, that party must produce sufficient evidence supporting the alleged factual dispute so that a jury is required to resolve the issue. Id. The trial judge "must view the evidence presented through the prism of the substantive evidentiary burden." Id. 106 S.Ct. at 2513. Considering that burden, the nonmoving party must come forward with specific facts from which a reasonable jury could find in his favor. Id. at 2514; T.W. Electrical, 809 F.2d at 631.
 
 
 8
 The Steelworkers charged Phelps Dodge with violating the strikers' civil rights under color of state law. To prevail, the union was required to prove the existence of a conspiracy, as private persons act under color of state law only when they conspire with or wilfully participate with state officials to deprive others of constitutional rights. Tower v. Glover, 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984); Scott v. Rosenberg, 702 F.2d 1263, 1269 (9th Cir.1983), cert. denied, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984).
 
 
 9
 Proof of a conspiracy requires a showing of agreement or meeting of the minds between the private persons and government agents. All must, at least, share common objectives or purpose. Fonda v. Gray, 707 F.2d 435, 438 (9th Cir.1983). To indicate a dispute of material fact in the context of a civil rights claim, there must be some evidence of control by the private party over the actions of the state officials. See Arnold v. International Business Machines, 637 F.2d 1350, 1356-57 (9th Cir.1981). See also Mann v. City of Tucson, Dep't of Police, 782 F.2d 790, 793 (9th Cir.1986).
 
 
 10
 In response to the summary judgment motion, the Steelworkers presented evidence of relationships between Phelps Dodge and the Justice of the Peace, the county attorney, and several sheriff's deputies. They noted that many of those persons lived in or moved into company housing, that many had relatives working for Phelps Dodge, before and/or during the strike, that interest-free installment sales were made to some deputies, and that a credit account for the sheriff's department was established during the strike.
 
 
 11
 The unions contended that there was concerted activity between the company and law enforcement officers. Citing Phelps Dodge security records and Sheriff's Department logs, they alleged shared radio channels, daily meetings between deputies and security guards, and discussion of decisions regarding treatment of picketers.
 
 
 12
 Finally, they produced depositions of several persons indicating that Phelps Dodge was not satisfied with the response of the police to the strikers. According to the depositions, the company consistently asked the police to adopt a more aggressive posture and to begin arresting those strikers who were most actively involved in the violent activity. There was evidence that after an especially violent and explosive confrontation at the gates had forced closure of the Ajo facilities, the company demanded that the sheriff respond forcefully. It asked that those involved be arrested, and it requested that bail be set high enough to keep the strikers off the streets.
 
 
 13
 The unions assert that this is circumstantial evidence of a conspiracy between the company and the law enforcement officials requiring a trial. Phelps Dodge maintains, and we agree, that its responses to the strike were those of an innocent, aggrieved party looking for justice and for protection by the police. We hold that only speculation and conjecture could support a finding of a conspiracy.
 
 
 14
 In a small town, such as Ajo, it would be unlikely that police and company employees would not be related. Because Phelps Dodge was the major landowner and employer of the area, doubtless many in every occupation lived in company-owned housing, traded at the company store, and had worked for the company in some capacity. These facts evidence the realities of small town life. They do not fulfill the unions' burden of presenting evidence of a conspiracy. A jury could only speculate that the evidence of ties between the police and the company indicated improper leverage by the company over police, attorneys, and judicial officers.
 
 
 15
 When faced with a force of strikers determined to create confrontations and to interfere with the rights of employees to report peacefully to work, the company asked for whatever relief it could obtain from law enforcement personnel. Not satisfied with what seemed ineffectual measures, and injured economically, the company urged the police to increase their level of protection. Realizing the concern of the company, the sheriff notified it in advance of actions that could cause serious repercussions. No evidence was presented from which a jury could infer that the company and police jointly planned and implemented efforts to control the strikers.[1]
 
 
 16
 Evidence that the company insisted that the Sheriff act to stop the violence, the blockading of the company, and the breaking of the law does not indicate control over police actions necessary to indicate a dispute of material fact sufficient to meet the summary judgment motion.
 
 
 17
 In their arguments before the district court in opposition to a motion to dismiss claims against the Sheriff's Department officers, the unions made several representations and admissions. They contended that the policies of the county and the decisions of county authorities were responsible for the treatment of the strikers, the arrests, and the high bail. The evidence supports these representations. There is no evidence that would connect actions of the police with some further direction by Phelps Dodge. The unions have not met their evidentiary burden on the issue of conspiracy. Summary judgment was appropriate.
 
 
 18
 AFFIRMED.
 
 NOONAN, Circuit Judge, dissenting:
 
 19
 The plaintiffs have offered evidence of a discriminatory pattern of law enforcement: the strikers arrested for the violent acts of August 9, 1983 charged with felonies for which high bail was set by Justice of the Peace Helen Gilmartin; striker Ronald Roades arrested without cause and a bail set by Gilmartin higher than the maximum fine imposable for the misdemeanor charged; striker Solia Bon arrested and jailed by Gilmartin for telephone harassment; striker Richard Olen, as he left the picket line, arrested, handcuffed, and mistreated by police for not having his driver's license in his possession; striker Janie Ramon arrested, tried without counsel by Gilmartin, convicted of assault, and fined $500 for involvement in a fight from which neither physical nor property damage resulted. In contrast: strikebreakers slashing tires and breaking windshields on strikers' cars, and the police, when informed of the assailants' identities, doing nothing; Rick Scroggins, a strikebreaker, throwing a rock through the window of the van of Lew Patino, a striker, and then breaking Patino's jaw with a rifle butt, with Scroggins being arrested and released on his own recognizance and, having been found guilty by Gilmartin, sentenced only to make restitution for the van window; assault on Patino by Neil Groves, a strikebreaker, reported to the police without the police taking action; telephone harassment of Nancy Flores, the wife of a striker, including the threat, "We are going to kill your kids", reported to the police who refused to investigate or install a phone "grabber" on her line; obscene actions by Arthur Love, a strikebreaker, directed at women picketers, reported to the police without the police taking action; assaults by gun by a strikebreaker on Rita Alegria and Raul Malindo, reported to the police without the police taking action.
 
 
 20
 The contrast between these two patterns is such that there is a material factual dispute over the cause of the difference. Phelps Dodge denies that it conspired with the law enforcement authorities to bring about these distinct patterns. The company asserts that the strikers who were arrested, bailed, or prosecuted were so treated pursuant to independent decisions of the police or the Justice of the Peace. The company, asserting that it was involved in no conspiracy, implies that it has nothing to explain as to the alleged failures of the police and Gilmartin in regard to violence by the strikebreakers. The company's brief fails almost completely to address these failures. In contrast, the Steelworkers urge that such disparate patterns of conduct, where the dividing line appears to be whether a man or woman is or is not a striker against Phelps Dodge, lead to a rational inference that Phelps Dodge arranged for the discriminatory patterns; that, in short, the patterns are themselves evidence of conspiracy to deny the plaintiffs their civil rights.
 
 
 21
 On this appeal from summary judgment, we cannot say who is right--Phelps Dodge protesting its innocence, or the Steelworkers saying that the company's guilt is clear. But we must acknowledge the existence of a factual dispute, which only the triers of fact should resolve.
 
 
 22
 The court appears to believe that the only evidence the Steelworkers has offered is the evidence of the close relations that existed between the biggest employer in town and the police. The court does not address the inference of conspiracy that may be drawn from the discriminatory patterns of law enforcement. Granted that the company had every right to ask police protection of its property and the prosecution of those strikers who committed violent acts, the strikers had an equal right to protection and to the prosecution of those Phelps Dodge strikebreakers who injured them. The evidence presented by Steelworkers is that such protection and prosecution of violent acts was denied them. That evidence is undisputed. The reason for this discrimination, rational triers of fact could find, was agreement, violative of the strikers' civil rights, between Phelps Dodge and the police and Justice of the Peace Gilmartin. Inference to such an agreement would be neither guesswork nor speculation, but a rational conclusion drawn from the disparity of treatment.
 
 
 23
 When a painting is done in chiaroscuro, forms and volumes are intelligible in the contrast of light and dark. If you read only the light, the picture is a blur. The contrast conveys the meaning. A Rembrandt or a Caravaggio becomes a blank unless the pattern created by the contrast is observed. So here: a reading of only one half of the evidence prevents the pattern from being perceived.
 
 
 24
 Steelworkers' evidence does not consist solely in the small town relationships of the company and the local officials. But these relationships are highly relevant in assessing the strength of the inference to be drawn from the discriminatory patterns. Ajo is a town whose population in 1983 was no more than 5,000. It is an isolated town, about 130 miles from Tucson. The only large employer in the town is Phelps Dodge. The only large landlord of rental property available for housing is Phelps Dodge. By virtue of these basic characteristics of the community, Phelps Dodge dominates the town.
 
 
 25
 Beyond this structural relationship of company and town, there is specific evidence of close cooperation between the company and law enforcement officials. There were many casual interactions between the police and the personnel of Phelps Dodge. There was the meeting at the plant of the Sheriff and the Plant Manager on August 9, 1985, to which the Steelworkers attach especial importance. These interactions, this meeting are not themselves evidence of conspiracy. They are evidence of the opportunity to conspire. They form a background against which the discriminatory patterns occurred and in terms of which the inferences to be drawn from these patterns may be inspected.
 
 
 26
 According to the deposition of Carlos Camarillo, the police in the town did not act "without the consent of Phelps Dodge.... Any time they were handing out anything they would have a sheriff's deputy close by working in coordination with them." Seven sheriff's deputies rented from Phelps Dodge. Three wives of sheriff's deputies worked for Phelps Dodge during the strike. In July of 1983, a month before the strike, Phelps Dodge Mercantile Company, the Phelps Dodge subsidiary which operated a store in Ajo, opened a credit account for the Pima County Sheriff's Department, through which sheriff's deputies on assignment in Ajo could charge their meals. County Attorney Casteel became a tenant of Phelps Dodge during the strike.
 
 
 27
 Most remarkably, Justice of Peace Helen Gilmartin, a key player on the law enforcement scene, had been a security guard for the company. She was asked to run for her judicial office by the Chief of Security at Phelps Dodge at a time when she had been furloughed and was hopeful of being rehired by Phelps Dodge. When she was elected, she was put on leave of absence from Phelps Dodge. She had obtained company housing as a company employee and continued to rent it while no longer on the company payroll. She so identified with the company that she had personalized license plates, for which she paid an extra fee, that read, "PD Ajo", meaning "Phelps Dodge Ajo". She had had the plates for three years and did not bother to change them after assuming her judicial office. The representative of impartial justice in Ajo, she drove by the picket line with the plates and considered it "absolutely ludicrous" that anyone would make an issue of this identification with her old employer.
 
 
 28
 Helen Gilmartin's flaunting of her plates may have amounted to judicial impropriety. Who wants a judge who wears the colors of a party? But as the court observes, most of these undisputed facts do not by themselves show "improper leverage". No impropriety exists in a company renting its housing or providing credit to sheriff's deputies. No impropriety exists in a company hiring the wives of deputies. No impropriety exists in a company security guard running for justice of the peace. These actions, all innocent in themselves, do establish in this case the closeness of the relations between the company and the police. These actions do not prove conspiracy. They are however, "contextual facts", which properly form a foundation for consideration of the factual inference in dispute. See T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 631 (9th Cir.1987).
 
 
 29
 Not improper leverage but leverage is what these facts establish. The landlord, the employer, the patron had the means of applying pressure to achieve its objective. Did it do so? That remains to be seen at a trial. Steelworkers' evidence of discriminatory law enforcement raises the question whether an actual conspiracy did or did not exist. Neither a district court ruling on a motion for summary judgment nor an appellate court may properly resolve the factual issue.
 
 
 30
 The court answers this dissent in a footnote that confuses the facts showing a structural relationship with the specific facts from which conspiracy might properly be inferred. Conspiracy is normally proved by inference. It is not clear why the court is unwilling to let a jury draw inferences in this case. The ordinary rules governing summary judgment are set aside. The court decides what belongs to the jury to decide. I respectfully dissent.
 
 
 
 [1]
 The dissent argues that summary judgment is improper because a jury could infer the existence of a conspiracy from "contextual facts" such as the "structural relationship" between the company and the town, and the "evidence of close cooperation between the company and law enforcement officials." The dissent concedes that the record is devoid of evidence directly tying the company to the pattern of discriminatory law enforcement. It maintains, however, that "the patterns are themselves evidence of conspiracy to deny plaintiffs their civil rights."
 What the dissent overlooks is the requirement that a nonmoving party, if it is to survive a motion for summary judgment, produce "specific facts" supporting its theory to go along with contextual evidence. T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 631 & n. 3 (9th Cir.1987). In the context of a claim of conspiracy to violate the nonmoving party's civil rights, that requirement entails the production of direct evidence that Phelps Dodge exercised control of power over law enforcement officials, and that Phelps directed those officials to violate the steelworkers' civil rights. Arnold v. International Business Machines, 637 F.2d at 1356. In this case, no such specific facts were presented.