GORSUCH, Circuit Judge,
concurring.
We shouldn’t be surprised that the common law usually supplies a sound remedy-when life, liberty, and property are taken. After all, the whole point of the common law as it evolved through the centuries was to vindicate fundamental rights like these. That’s the insight of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). While 42 U.S.C. § 1983 authorizes federal courts to remedy constitutional violations by state officials acting under color of state law, and while Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 *1084 (1961), has read this authorization broadly, the authority to remedy a claim doesn’t always mean the duty to do so. Federal courts often abstain when they otherwise might proceed out of respect for comity and federalism and the absence of any compelling need for their services. See, e.g., Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Parratt explains that this familiar principle applies in the § 1983 context just as it does elsewhere. Often, after all, there’s no need to turn federal courts into common law courts and imagine a whole new tort jurisprudence under the rubric of § 1983 and the Constitution in order to vindicate fundamental rights when we have state courts ready and willing to vindicate those same rights using a deep and rich common law that’s been battle tested through the centuries. See 451 U.S. at 539-44, 101 S.Ct. 1908; see also Mann v. City of Tucson, Dep’t of Police, 782 F.2d 790, 797-98 (9th Cir.1986) (Sneed, J., concurring in the result); Richard H. Fallon, Jr., Some Confusions About Due Process, Judicial Review, and Constitutional Remedies, 93 Colum. L.Rev. 309, 310-11 (1993).
Of course, if a plaintiff can establish that state law won’t remedy a constitutional injury Parratt recognizes that the doors of the federal courthouse should remain open to him. So, for example, if a state has overridden the common law and erected a statutory immunity where the Constitution would recognize none, a federal court shouldn’t abstain. Or if the state proceeds more invidiously, maintaining facially adequate law on the books but acting discrimi-natorily in practice, the federal court must hear the case. Federal courts might even assume state remedial processes won’t suffice to redress the constitutional injury when a state rule, policy, or custom itself caused the injury — for there one might worry about a sort of potential conflict of interest or at least the appearance of one. But when a rogue state official acting in defiance of state law causes a constitutional injury there’s every reason to suppose an established state tort law remedy would do as much as a novel federal remedy might and no reason exists to duplicate the effort. See, e.g., Parratt, 451 U.S. at 543-44, 101 S.Ct. 1908; Mann, 782 F.2d at 798 (Sneed, J., concurring in the result).
Our case highlights the point. We face a traffic accident, a deeply tragic traffic accident, but also exactly the sort of thing state courts have long and ably redressed. A state court could provide relief using established tort principles (e.g., negligence) and there’s little reason to doubt it would — after all, the officer’s actions violated state law and he’s even been criminally charged. Or a federal court might provide the same relief using primordial constitutional tort principles that must be expounded more or less on the fly — by asking what’s “arbitrary” or what “shocks the judicial conscience.” County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). The Supreme Court has acknowledged that constitutional liability principles like these are “open-ended” and provide few “guideposts for responsible decisionmaking.” Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). So why take up the challenge needlessly? When doing so risks imposing a cloud of uncertainty on government officials about the scope of their duties and liabilities? When it threatens to invite disuniformity among the circuits as they attempt to reproduce hundreds of years of accretive common law decisionmaking? See Fallon, supra, at 349-50. To entertain cases like this in federal court as a matter of routine risks inviting precisely the sort of regime the *1085 Supreme Court has long warned against— one in which “any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation” in federal court and thus “make of the Fourteenth Amendment a font of tort law” needlessly superimposed on perfectly adequate existing state tort law systems. Albright v. Oliver, 510 U.S. 266, 284, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Kennedy, J., concurring in the judgment) (quoting Parratt, 451 U.S. at 544, 101 S.Ct. 1908); see also Lewis, 523 U.S. at 848, 118 S.Ct. 1708; Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).
True, language in Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), suggests that Parrott’s abstention principle may apply to procedural and not substantive due process claims like the one in this case. Id. at 124-25, 110 S.Ct. 975. But, respectfully, the suggestion along these lines came in dicta and several reasons exist to doubt it. For starters, the distinction between procedural and substantive due process isn’t found in the constitutional text and is famously malleable in any event; one might wonder whether a boundary like that offers a stable foundation on which to rest such a weighty distinction. See, e.g., Albright, 510 U.S. at 285, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment); Mann, 782 F.2d at 796-98 (Sneed, J., concurring in the result). One might ask too whether Parratt itself might be better understood as a substantive rather than a procedural due process case. See, e.g., Fallon, supra, at 341-44. Then there’s the fact the Supreme Court and others have already applied Parratt to cases involving the deprivation of substantive rights. See, e.g., Williamson County Reg’l Planning Comm’n v. Hamilton Bank, 473 U.S. 172, 195, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Newsome v. McCabe, 256 F.3d 747, 750-51 (7th Cir.2001); Schaper v. City of Huntsville, 813 F.2d 709, 718 (5th Cir.1987). And the fact the Supreme Court has repeatedly admonished courts to proceed with special caution when handling substantive due process claims. See, e.g., Glucksberg, 521 U.S. at 720, 117 S.Ct. 2258. Finally, after Zinermon came Lewis, a decision in which the Court specifically reserved the question whether Parratt applies to substantive due process claims, confirming that the issue remains a live and open one. 523 U.S. at 840 n. 4, 118 S.Ct. 1708. Indeed, it’s hard to identify a principled justification for extending Parratt piecemeal to procedural due process claims rather than wholesale to all due process claims. Zinermon observed that a substantive due process violation is complete upon a deprivation while a procedural due process violation requires us to wait and see what process the state provides. But it’s unclear why that distinction makes a difference when Parrott’s logic cuts across both kinds of cases, asking in all events whether there’s a need for federal intervention or whether state remedial processes might do just as well.
Losing a child is a nightmare of the darkest sort and the suffering the Brow-der family has had to endure is beyond words. But there’s little reason to think that state courts would fail to fulfill their oaths to see justice done in this case, at least as well as it can ever be done in a case so tragic. To be sure, a Parratt argument wasn’t properly presented in this case and so we rightly hold it waived in this instance. But when the issue is raised in appropriate future cases, I believe we would do well to consider closely its invitation to restore the balance between state and federal courts. For we should be able to expect both that justice will be done in cases like this one and that it will be done while exhibiting the sort of *1086 cooperative federalism that has traditionally defined our law.